## GREEN CLAY, EXECUTOR, *v.* T. H. ALLEN & Co.

1. CONTRACT. *For future delivery of cotton. Validity thereof.*
   A contract of sale for the future delivery of cotton is binding, unless it be shown that it was the intention of both parties thereto that there should be no actual delivery, but only a settlement by the payment of the difference between the contract price and the market price when the delivery is to be made.

2. SAME. *Construction of. Burden of proof.*
   Where a contract of doubtful import may be construed as legal or illegal, that construction must be adopted which makes it legal, and the burden of proof is upon him who sets up the illegality of a contract to show everything necessary to render it so.

APPEAL from the Chancery Court of Bolivar County.

HON. W. G. PHELPS, Chancellor.

Thomas H. Allen & Co. filed a petition in the matter of the estate of W. G. Myers, deceased, against Green Clay, executor of the last will and testament of the deceased, for the allowance of a claim for one thousand five hundred and ten dollars and sixty-nine cents alleged to be due by Myers to them. The petition set out that Myers had instructed them to sell for him three hundred bales of cotton to be delivered by him in the future; that they sold the

cotton through Latham, Alexander & Co., in New York city ; that under instructions from Myers to exercise their judgment and discretion in the matter, when the time for delivery arrived, they ordered that three hundred bales of cotton be purchased and delivered for Myers, and that the same was done, and that the above sum sued for remains due them from Myers on the transaction. Green Clay, Myers' executor, replied that the claim grew out of a wagering contract; that the cotton ordered to be sold was never intended to be delivered by any of the parties, and the contract was simply to be settled by the payment of difference between the price at the time of the sale and the time for delivery.

The Chancellor found for the complainants, and ordered that an account be taken to determine the amount due.

It was shown in evidence that the complainants received no compensation, but acted as go-betweens in the transaction, furnishing the money or credit. Evidence was introduced which tended to show that Myers never intended to deliver any cotton. The only evidence of the intention of the other parties to the transaction was as to the general course of dealings with reference to such contracts of sale for future delivery of cotton, and as to the usual intentions of the parties thereto. The defendant appealed from the decree of the Chancellor.

*Frank Johnston,* for the appellant.

Among intelligent people and business men the real nature of " cotton futures " is universally known to be wagering transactions based on future market prices and to be settled on the basis of differences. People who never owned a bale of cotton, buy and sell this product in lots of a thousand bales.

Whenever one of these transactions is mentioned this is known to be its real character masked under the thin disguise of buying or selling back, that is exhibited in the New York broker's account in this case. The courts must know something of a class of transactions that everybody else is familiar with.

And when the courts are constantly in danger of being imposed on by these gambling masquerades, " it is proper to require, not that the defendant assume the difficult task of proving an intent to gamble,

but that the plaintiff carry the comparatively slight burden of showing that the transaction which may seem so nearly akin to a gaming device was in reality a genuine sale." To quote further the language of a writer in the Central Law Journal, " It is necessary in these modern times that courts shall consider the forms which speculation assumes, and the disguises she puts on in imitation of legitimate trade, if they would avoid imposition and see things as they are."

On this precise question I refer to the case of *Cobb* v. *Prell* (15 Fed. Reporter), where the court held that where there was a doubt thrown over a transaction of this sort, a contract in futures, it devolved on the plaintiff to show that there was an actual intention to deliver the commodity. *Cobb* v. *Prell*, 15 Fed. Rep. 774.

*Frank Johnston* also made an oral argument.

*W. P. & J. B. Harris*, on the same side.

It may be asserted that it is conceded in all cases on the subject having any weight that without regard to the forms or terms employed in a written contract or in accounts, or otherwise, if the intention was that the parties were to settle differences without regard to any transfer by delivery, or otherwise, of the cotton, grain, pork, or other commodity, the apparent subject of the dealing, it is a wager on the price. Evidence on the point of intention may consist in the fact that the dealing had all the marks characteristic of a prevalent vice. The margin, the apparent inability of parties to enter into real transactions of the amount, the non-existence of the commodity in the place and accessible with resources at command, as contrasted with the ability to gamble on the future price, with resources falling far short of the values apparently involved, the *continued* action on fluctuations from the time of the contract by repeated putting up of margins by one side or the other, would show an intent not to deliver or more properly a central purpose to deal in differences only. All this evidence is before the court here with nothing to sustain an actual sale or intent to sell except some terms common to both kinds of transactions, as buy, sell, bought, sold, purchase, etc.

The fact that the account rendered is peculiar and fits the shown

transaction, and can rarely be found, if ever, to follow real trans-
actions, followed by the fact that the parties settled by differences,
makes a *prima facie* case against the plaintiff's alleged sale and
purchase, and plainly puts the burden on him to prove an actual
delivery.

*W. P. Harris* argued the case orally.

*Nugent & McWillie*, for the appellees.

A transaction, which on its face is legitimate, cannot be held
void as a wagering contract *by showing that one party only so un-
derstood and meant it to be.*

"The proof must go further and show *that the understanding was
mutual, that both parties so understood the transaction.*   *   *   *   *
It is not sufficient for the defendant to prove that Irwin and Davis
never understood that they were to deliver wheat in fulfillment of
the sales made for them by the plaintiffs.    *The presumption is that
the plaintiffs expected Irwin and Davis to execute their contracts, ex-
pected them to deliver the amount of grain sold, and before you can
find that the sales were gambling transactions and void, you must find
from the proof that the plaintiff knew or had reason to believe that
Irwin and Davis contemplated nothing but a wagering transaction,
and acted for them accordingly.*"    *Irwin* v. *Willair,* 110 U. S. 499.

It is not pretended that there is any evidence as to Myers' in-
tention when he requested Allen & Co. to sell, or have sold, for
him three hundred bales of cotton in New York, November de-
livery ; nor that his brokers in New York or his factors in Mem-
phis had any knowledge of his intention when his orders were
executed.    It is true the letters *written after the contract was made*
speak of "covering," but this may have been an after-thought,
superinduced by the rise in the market, for the purpose of pre-
venting a loss, and is perfectly consistent with the *bona fides* of the
transaction.    That Myers shipped no cotton to New York cannot
alter or affect the question.    Cotton should be as easily bought in
New York as sold, and was always there in sufficient quantity for
delivery to meet contracts.    See *Baldwin* v. *Flagg,* 36 N. J. Eq.
48 ; *Hatch* v. *Douglass,* 40 Am. Rep. 154.

*W. L. Nugent,* of counsel of the appellees, argued the case orally.

ARNOLD, J., delivered the opinion of the court.

The transaction in question occurred prior to the passage of the act of 1882, "to prohibit the sale and purchase of futures," etc., and a construction of that statute is not involved in the case. The defense made by appellant, that the amount claimed by appellees on open account grew out of and was paid by them on a gambling transaction, of which they were cognizant and in which they participated, is not sustained by the proof. It is not unlawful to buy or sell commodities to be delivered at a future day, even if at the time of the purchase the seller has none to deliver and no means of obtaining them, except to go into the market and buy them, if the parties really intend and agree that the goods are to be delivered and the price paid. Such a proceeding is a wager, and as such void, only when the real intent of the parties is to speculate in the rise and fall of prices and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract. The character of such an operation is derived from the intention of the parties, and such party must concur in the vicious intent to bring the transaction under the denunciations of the law against gambling. If either contracts in good faith and contemplates a sale to be followed by the constituents of delivery and payment, he is entitled to the benefit of the contract, no matter what may have been the secret intention or purpose of the other party. Benjamin on Sales, 4th ed., §§ 82, 83, and 542, and authorities there cited; *Irwin* v. *Willair*, 110 U. S. 499; *Rountree* v. *Smith*, 108 Ib. 269; *Gregory* v. *Wendell*, 40 Mich. 432; *Gregory* v. *Wendell*, 39 Ib. 337; *Pixley* v. *Boynton*, 79 Ill. 351.

We are unable to determine from the testimony what the intent of the parties was in reference to the delivery of the cotton bought and sold. The illegality of the dealing was alleged by appellant, and it is certainly no new doctrine in this State to say that it was incumbent on him to prove it, and to show everything necessary to make it so. The presumptions of law are in favor of, rather than against, the validity of contracts, and if a contract of doubtful im-

port is susceptible of two interpretations, the one legal and the other illegal, that construction must be adopted which renders it lawful. *Wilkins* v. *Riley*, 47 Miss. 306 ; *Merrill* v. *Melchior*, 30 Ib. 516.

*Affirmed.*