## Cohn et al. *v.* Brinson.

[73 South. 59.]

1. GAMING. *Futures. Recovery of loss. Statutes. Agent or intermediary. Money lent or advanced. Cancellation of mortgage. Invalidity. Wages.*

Under Laws 1908, chapter 118, prohibiting dealings in futures and declaring such contracts unlawful and section 9 providing that the wife of a person sustaining a loss in future transactions, may within five years, recover, by suit, the amount so lost as liquidated damages from the broker, agent, or intermediary

negotiating such transactions, a bank which did not represent
any cotton broker with whom plaintiff's husband did business,
did not receive the market quotations, and take orders for fu-
ture contracts, had no private wire over which to receive quo-
tations and to submit orders, in short was not the agent or in-
termediary through whom plaintiff's husband did a gambling
business, was not liable to the wife for the losses of her hus-
band in gambling transactions in futures.

2. Gaming. *Money lent or advanced. Recovery. Statutes.*
    Under Code 1906, section 2302, giving a right to the wife of any
    one losing and paying money at gaming or wagering, a right to
    recover it, without expressly giving the wife the right to recover
    from a bank money knowingly lent or advanced for the pur-
    pose of gambling and section 2303, declaring futures unlawful,
    and giving her the right to sue for and recover money lost and
    paid on futures from the principal or agent knowingly receiving
    the money on such illegal transactions, the wife of one dealing
    in cotton futures directly with brokers in another state, could
    not recover money lent or advanced by a bank which knew of
    the borrower's dealings and never repaid, except by renewals
    forming a part of the consideration of a note secured by a
    mortgage of her homestead and other property.

3. Gaming. *Dealing in futures. Recovery. Statutes.*
    Under Code 1906, section 2300, making absolutely void and un-
    enforceable any contract for the reimbursing, or repayment of
    any money knowingly lent or advanced for the purpose of gam-
    bling, and section 2301, providing that any mortgage or con-
    veyance of any real estate to satisfy or secure money loaned
    or advanced for such purpose shall vest in the wife and chil-
    dren of the mortgagor the whole title of the mortgagor as though
    he had died intestate, the wife of one to whom a defendant
    bank knowingly lent or advanced money for use in dealing in
    cotton futures, unpaid except by renewals forming a part of
    the consideration for a note secured by a mortgage executed
    by herself and husband including their homestead and her
    separate property, was entitled to have the mortgage cancelled
    whereupon the property would immediately vest in herself and
    children if any.

4. Same.
    In such case it was immaterial that the borrower had the right
    to buy cotton futures by mail or wire directly from brokers in
    another state, since it is the policy of the law to prohibit gambling
    of any kind and to deny the courts of the state to enforce gamb-
    ling contracts no matter where made.

5. GAMING. *Futures. Invalidity. "Wager."*

It is settled law that the contract for the purchase and delivery
of a commodity in the future and for the payment of the dif-
ference in price arising out of the rise and fall in the market
above or below the contract price is a wager on the future
price of the commodity, and is for that reason void when the
real intent of the parties is simply to speculate on the rise and
fall of prices and the goods are really not to be delivered.

APPEAL from the chancery court of Lincoln county.
Hon. LUTHER E. GRICE, Special Chancellor.

Bill in equity by Mrs. Allie V. Brinson against Louis
Cohn and L. H. Baggett, assignees, and the Commercial
Bank and Trust Company. Decree for the complainant
in part, and defendants prosecute a direct appeal, while
complainant prosecutes a cross-appeal.

Appellee was complainant in the court below, and ap-
pellants defendants. The opinion states the facts. The
laws quoted in the opinion contain the following pro-
visions.

Sections 2301, 2302, and 2303, Code of 1906, are as
follows:

2301. Any sale, mortgage, transfer, or conveyance of
any estate, real or personal, to any person or to another
for his use or benefit, or in any manner to satisfy or
secure money or other thing won, or any part thereof,
or to secure or satisfy any money or other thing lent or
advanced on any consideration, foundation, or purpose
mentioned in the last section, or any part thereof, shall
inure to and vest in the wife and children of said mort-
gager, seller, vendor, bargainor, or lessor, the whole
estate, title, and interest of such person sold, mortgaged,
bargained, transferred, or conveyed, as though such per-
son had died intestate. And the parties to any action
founded on any contract or transaction within this chap-
ter, shall be compelled to answer any bill of discovery
touching the same.

2302. If any person, by playing at any game whatever,
or by betting on the sides or hands of such as do play

at any game, or by betting on any horse-race or cock-fight, or at any other sport or pastime, or by any wager whatever, shall lose any money, property, or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, or his wife or children, may sue for and recover such money, property, or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, with costs.

2303. A contract for the purchase or sale of a commodity of any kind, to be delivered at a future date, the parties not intending that the commodity is to be actually delivered in kind and the price paid, shall not be enforced by any court; nor shall any contract of any kind commonly called "futures" be enforced, nor shall a contract in this section mentioned be a valid, consideration, in whole or in part, for any promise or undertaking and any person who shall make any such contract and by reason thereof lose any money, property or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, may, or his wife or children may sue for and recover such money, property or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, either for himself or as agent for another, together with all costs of suit.

Section 9 of chapter 118 of the Laws of 1908 is as follows:

Sec. 9. That the parents or parent, wife, child or children, executor or administrator of the person sustaining a loss, . . . may, within five years from the date such loss was sustained, recover by suit in the circuit court or chancery court, the amount so lost, by the person making such contract, which sum shall be considered as liquidated damages to the person suing therefor, from the broker, agent or intermediary who negotiated such transaction.

This suit originated in the chancery court of Lincoln county by a bill in equity filed by Mrs. Allie V. Brinson, appellee and wife of T. H. Brinson, to recover from the Commercial Bank & Trust Company certain sums of money alleged to have been lost by the husband of complainant in gambling on cotton futures, and to cancel a certain mortgage executed by Mr. and Mrs. Brinson to the bank as security for the balance of an indebtedness of one thousand seven hundred seventy-four dollars and ninety-four cents due by the husband to the bank. Appellants are the assignees and receivers of the Commercial Bank & Trust Company. The mortgage in question was given December 18, 1913, in renewal of a prior mortgage securing a larger indebtedness, upon which large payments had been made, and embraced in the mortgage is the homestead of Mr. Brinson, title to which is in his name, and also a certain parcel of real estate standing in the name of Mrs. Brinson. The bill alleges that the said bank knowingly lent or advanced Mr. Brinson large sums of money at different times to buy cotton futures and to provide the necessary margins on his investments upon the cotton exchange of New Orleans, La.; that the indebtedness secured by the mortgage sought to be cancelled was founded upon an illegal consideration; that the contracts for the repayment of the money were void at law and in equity; and the mortgage in question should be canceled. The bill claims a right also to recover the aggregate sum of four thousand six hundred dollars alleged to have been lost by the husband in gambling on cotton futures through the said Bank & Trust Company. Answer was filed by appellants, and the cause heard on bill, answer, and oral testimony. The special chancellor who heard the case permitted the complainant to recover the aggregate sum of two thousand two hundred and fifty-one dollars and twenty cents, which he found to have been paid by Mr. Brinson to the Bank & Trust Company on gambling transactions; but the chancellor declined to grant

the full relief prayed for, and declined to cancel the
mortgage.   From this final decree appellants, as the
defendants in the court below, prosecute a direct appeal,
and appellee prosecutes a cross-appeal.

It is the contention of appellants that complainant
was not entitled to recover anything under the facts of
this record, while appellee, as cross-appellant, pred-
icates her right to relief in this court on the alleged
error of the chancellor in declining to cancel the mort-
gage, under the authority and in pursuance of the pro-
visions of section 2301, Code of 1906.   The record is
voluminous, and for a full understanding of the opinion
a summary of the facts is unnecessary.   Appellant
seems to rely upon the Code sections, chapter 56, Code
of 1906, on gambling contracts, as well as chapter 118,
Laws of 1908, being an act to prohibit dealing in
"futures" and to suppress "bucket shops."

*H. C. Cassedy* and *J. W. Cassedy,* for appellants.

*G. Wood Magee, Brennan & Boothe* and *W. C. Wells,*
for appellee.

STEVENS, J. delivered the opinion of the court.

The testimony in this case establishes beyond doubt
that T. H. Brinson, the husband of appellee, was a
regular customer of the Commercial Bank & Trust
Company, with whom Brinson carried an account, and
from whom he borrowed sums of money from time to
time.   The bank was doing a regular banking business,
and was in no sense operating a bucket shop, contrary
to any of the provisions of chapter 118 of the Laws of
1908.   The bank did not represent any cotton brokers
of New Orleans with whom Mr. Brinson did business;
it did not receive the market quotations and take orders
for future contracts;  it had no private wire over which
to receive quotations and to submit orders;  it, in short,
was not the agent or intermediary through whom Mr.

112 Miss.—23

Brinson did a gambling business. The provisions of chapter 118, Laws of 1908, therefore, do not apply in this case, and the right of the wife to recover alleged back losses cannot be based upon the statute of 1908.

Looking to the Code sections, it will be observed that sections 2302 and 2303 are the only other statutes granting to the wife or children the right to sue for and recover money lost or paid on gambling transactions. Under the express provisions of section 2302, no right of action is given a wife to recover from a bank money knowingly lent or advanced for the purpose of gambling. The right accorded to the wife under section 2303 of the Code is the right to sue for and recover money lost and paid on "futures" from the principal or agent knowingly receiving the money on such illegal transactions: This section is designed to afford a remedy against the principal or agent handling the future contracts. In the instant case Mr. Brinson did business directly with J. M. Harrison & Co. and Moyse & Holmes, cotton brokers and dealers in futures in New Orleans, La. The chancellor found as a matter of fact that the bank had knowledge that Brinson was borrowing money for the express purpose of gambling in futures, and the proof abundantly justifies this conclusion. The bank knew full well the purpose which induced Brinson to apply for accommodations, and it did not hesitate to supply Mr. Brinson the needed capital for gambling purposes, lending him various sums of money, and taking his demand notes therefor. The proof shows, further, that the material portion of the money originally advanced for this purpose was never in fact repaid, but by a series of renewals went into and formed a part of the consideration of a note for one thousand seven hundred seventy-four dollars and ninety-four cents secured by the mortgage in question. It is true that Brinson discounted some vendor's lien notes and obtained other accommodations on perfectly legitimate transactions. It is also true that large payments were made by Brinson

from time to time toward the reduction of his line of indebtedness at the bank. Some of the money repaid the bank appears to have been won on gambling transactions. The chancellor allowed a recovery for various payments which Brinson made the bank at different times, and evidently upon the theory that these payments represent losses sustained by Brinson in playing the cotton market. The right to recover these sums must be based upon the express provisions of some statute. In our judgment the chancellor erred in awarding the complainant a decree for these sums of money. It might be observed, in passing, that the contracts entered into by Mr. Brinson in buying or selling cotton on the future market were entered into at New Orleans, La., through brokers doing an established business at that place, and the contracts appear to be valid under the laws of Louisiana. The bank did not make these contracts for Brinson, and in no wise represented him in negotiating for or concluding any of his trades.

This brings us to a consideration of the complainant's rights under sections 2300 and 2301 of the Code. The first of these sections (2300) renders absolutely void and unenforceable any contract "for the reimbursing or repaying any money knowingly lent or advanced for the purpose of . . . gambling, or to be wagered on any game, play, horse-race, cock-fight, or on any sport, amusement, pastime, or wager." This statute is about as drastic and far-reaching as language can make it. If we give to the words employed by the legislature their natural meaning, then the loans made by the bank to Mr. Brinson for the purpose of buying cotton futures could not be recovered at the suit of the bank, and the notes evidencing such loans are "utterly void." The door of the court would be closed to both parties to such transaction. Such of these loans as have been repaid by Brinson are closed transactions, and neither this section nor any subsequent section of the Code undertakes to grant to the wife the right to recover upon any such past

transaction. But the money which has not been repaid represents an illegal consideration, and if any part of such consideration is embraced in the mortgage here sought to be canceled, then complainant as the wife of the mortgagor has, under the express provisions of section 2301, the right to claim a forfeiture or cancellation of the mortgage. This section (2301) expressly and clearly provides that any mortgage, transfer, or conveyance given to secure or satisfy any money "loaned or advanced" for any "purpose mentioned in the last section, or any part thereof, shall inure to and vest in the wife and children of said mortgagor, . . . . the whole estate, title, and interest of such person." It further provides that the interest or estate of the mortgagor shall vest in the wife and children "as, though such person had died intestate." This section is likewise very drastic and severe, but, as stated by WHITFIELD, C. J., in *Virden* v. *Murphy*, 78 Miss. 515, 28 So. 851, a case growing out of a bucket shop business, "We sit to administer the law as written, unswayed by sympathy." We think a material portion of the indebtedness representing money loaned for gambling purposes was renewed from time to time, and was carried forward in the present indebtedness secured by the mortgage executed by Mr. and Mrs. Brinson upon their homestead, and the illegal part of this indebtedness, like the fly in the ointment, taints the whole mass of indebtedness secured, and the interest of the mortgagor by force of the statute inures to the wife and children of Mr. Brinson, just as if he "had died intestate." It would be idle here to speculate just to what extent this statute does operate. The rights of Mr. and Mrs. Brinson, as between themselves, are not involved in the present case. Whatever right or interest Brinson attempted to convey to the bank by the mortgage inures to his wife and children; so far as this mortgage is concerned, Mr. Brinson is dead. It may be that the husband may experience some interest, as well as indulge in somewhat serious reflections,

in standing by and witnessing the devolution of his estate upon his wife and children, and seeing the court regard him dead. But forfeitures follow the gambler—forfeitures of property, friends, good health, and reputation. The design of the statute in question is to prevent this forfeiture from falling upon the innocent wife and children. Prior to the enactment of this statute it was a matter of common observation that losses sustained by the gambling husband frequently took away the shelter of the family home and left the wife and children without food or raiment. The design of the statute is to save to the innocent members of the family the community or family property wrongfully pledged as security for gambling transactions. The law denies the right of the money lender to furnish capital for unlawful business. The money changers have no more right to divert and prostitute the lawful capital of the country for such illegal purposes than has the individual the right to furnish the necessary firearms with which to commit murder. Money so loaned cannot be recovered, and the property of the husband, pledged to secure such money, immediately inures to and vests in the wife and children.

It is contended that Mr. Brinson had the right to buy cotton futures by mail or wire, as long as these contracts were consummated in Louisiana, and that money loaned for investment beyond the state would not come within the condemnation of the statute. We cannot so hold. As stated by McLEAN, J., in the opinion in *Ascher & Baxter* v. *Moyse & Co.,* 101 Miss. 36, on page 53, 57 So. 299, on page 304:

"It is true that an act of the legislature can have no extraterritorial force, and therefore can neither make unlawful a contract entered into upon the soil of another state, nor subject a party thereto to punishment, yet at the same time, in view of the well-settled public policy of this state, in contemplation of the growing and increasing evils of the traffic. both financial and moral,

it is unthinkable to believe that the legislature intended that the courts of this state should be thrown wide open, wherein the contracting parties should be given redress for the enforcement of such contracts when made outside of this state. There surely has been no change in the public policy upon this question, and certainly no developments in recent years which in the least commends this class or kind of dealing to the encouragement of either legislative or judicial bodies.''

It is settled law that the contract for the purchase and delivery of a commodity in the future and for the payment of the difference in prices arising out of the rise and fall in the market above or below the contract price is a wager on the future price of the commodity, and is for that reason void when the real intent of the parties is simply to speculate on the rise and fall of prices, and the goods are really not to be delivered. The proof in this case is undisputed that Mr. Brinson was simply dealing in cotton futures in the ordinary sense of that phrase, and had no intention in the world to deliver any cotton. He was wagering or speculating on the rise or fall of the cotton market, and using his money expressly and avowedly for that purpose. The bank was fully cognizant of this purpose. The testimony of the cashier himself is conclusive against the bank on this point. It may be conceded that by the express provisions of chapter 118, Laws of 1908, none of the provisions of that act would apply to transactions by mail or wire between persons in this state and persons outside of this state, where neither is represented by a broker, agent, attorney, or intermediary in the transaction; but, while the provisions of the act of 1908 would not apply, the loaning of money for this purpose is condemned by section 2300 of the Code. This money is loaned by a Mississippi bank to a citizen of Mississippi, and the notes evidencing the loan are executed in Mississippi. It is immaterial that the money is to be wagered beyond the confines of the state. It is the policy of our

state to discourage speculation in futures and prohibit gambling of any kind or character. The temptations and the curse of these unlawful speculations have been fully commented upon in previous decisions of our court. Unfortunately the evil has not yet been fully suppressed. The curse is still blighting many an innocent home, and bringing to the innocent members of the family tears of sorrow and despair. That the buying of cotton futures is a wager has been expressly decided by our court in *Clay* v. *Allen & Co.*, 63 Miss. 426, *Campbell* v. *National Bank*, 74 Miss. 526, 21 So. 400, 23 So. 25. *Gray* v. *Robinson*, 95 Miss. 1, 48 So. 226, and *Ascher & Baxter* v. *Moyse & Co.*, *supra*.

It is not our purpose to disturb the findings of the chancellor on the facts. He gave, however, the wrong relief. He should have denied a recovery of the money paid the bank, but should have canceled the mortgage. It follows that the decree of the court below should be reversed, both on direct and cross appeal. The final decree awarding a momentary judgment in favor of the complainant will be reversed and vacated, and a decree entered here canceling the mortgage. The decree of the lower court, taxing appellants with the cost in that court, should not be disturbed; but the costs of this appeal should be borne equally by both appellants and cross-appellant.

*Reversed on direct and cross appeal.*