FALK v. J. N. ALEXANDER MERCANTILE Co.*

(Division A. Feb. 16, 1925. Suggestion of Error Overruled March 16, 1925.)

[102 So. 843. No. 24592.]

GAMING. *Contract for purchase or sale of commodity to be delivered in future, actual delivery and payment not being intended, is void, although made to hedge against loss.*

A contract for the purchase or sale of a commodity of any kind to be delivered at a future day, the parties not intending that the commodity is to be actually delivered in kind and the price paid, is void, although the contract was made by the purchaser for the purpose of hedging against a loss he might sustain because of a decline in price of a like commodity which he had purchased and could not sell until a later date. Section 2303, Code of 1906 (Hemingway's Code, Section 1913); chapter 118, Laws of 1908 (Hemingway's Code, Section 1913); chapter 118, Laws of 1908 (Hemingway's Code, Section 1914 et seq.).

*Headnote. Gaming, 27 C. J., Section 271.

APPEAL from circuit court of Attala county.
HON. T. L. LAMB, Judge.

Action by A. B. Falk against the J. N. Alexander Mercantile Company. From judgment for defendant, plaintiff appeals. Affirmed.

*J. D. Guyton* and *J. A. Teat,* for appellant.

The defense made was under statute, section 2303, Code of 1906; section 1913, Hemingway's Code. Our supreme court has clearly and concisely stated the law of this case in *Clay, Extr., v. Allen & Co.,* 63 Miss. 426. We have examined other decisions of our supreme court, all of which are consistent with, reaffirm and support the doctrine as stated in the Clay case. *Telephone Company v. Littlejohn,* 72 Miss. 1025, 18 So. 418; *Lemonius v. Mayor & Co.,* 71 Miss. 514, 14 So. 33; *Weld & Co. v. Austin,* 107 Miss. 279, 65 So. 247; *Asher v. Baxter, etc.,* 101 Miss. 36; *Long v. Eaves,* 99 Miss. 888, 56 So. 178; *Cohn et al. v. Brinson,* 112 Miss. 348; *Gray v. Robinson,* 95 Miss. 1. We call attention, also, to the text of 6 R. C. L. under "Contracts," sec. 185, and 20 A. L. R. 1422; *Bolfing v. Schoener* (1920), 144 Minn. 425, 175 N. W. 901; *John Miller Co. v. Klovstad* (1905), 14 N. D. 435, 105 N. W. 164.

The question involved in this case is simply hedging. The cotton market at the time that this transaction was made, was erratic, fluctuating and uncertain. The warehouse at Kosciusko was congested and delivery could not possibly be made. There was an embargo in effect and cotton could not be shipped to New Orleans until consent could be had. The question of delivering spot cotton was, therefore, a most difficult and serious problem.

The defendant, the J. N. Alexander Mercantile Company, desired to sell four hundred bales of cotton at the highest price, and instead an exceedingly high price, thirty-nine and five-tenths cents per pound and in order to make this sale of said cotton to Falk & Company, cotton brokers, desired to and did enter into an agreement to protect and assure Falk that he would not take a loss by reason of the purchase of the spot cotton under the circumstances at the price proposed to be agreed upon. The record defines the agreement entered into by and between the parties.

Falk, the cotton broker, plaintiff, proposed to and did buy the four hundred bales of cotton at thirty-nine and five tenths cents on the condition that January futures were to be sold by J. N. Alexander Mercantile Company on the New Orleans Cotton Exchange to protect Falk, cotton broker, plaintiff, against the fluctuation of the market. This was agreed to by the parties. It was a contract, legal and valid, one entered into by the parties for mutual benefit; binding upon both and intended to be a legitimate transaction and an arrangement by which the business could best be attended to.

It is shown that appellee had the spot cotton on hand; that he is a merchant who buys and sells cotton; that he had his cotton for no other purpose than to sell; that he, in fact, did sell it; that he sold the futures against the spot cotton had on hand at the time the futures were sold; that it was then contemplated by Falk and by the New Orleans brokers that this spot cotton would be delivered on these contracts; that as a matter of fact this cotton was shipped to New Orleans and delivered by Falk on futures he had sold which included the futures he sold for Alexander Mercantile Company; that the January futures with Lehman Stern & Company were transferred to March, and before March arrived the cotton was delivered, the actual spot cotton, among which was the four hundred bales of appellee; that appellee, after selling his January futures, sold the spot cotton to Falk, the same four hundred bales he had contracted to deliver on the January futures, promising Falk at the time that he would pay any losses on the futures and still protect him.

Of course it made no difference, so far as the validity of the contract was concerned, whether the appellee, after selling futures against his spots, sold his spot cotton or not.

If the contract was valid when it was made, it was valid always, and could not become illegal by an act in violation of it. If this contract is illegal it was illegal in

its inception. If it was valid in its inception, it is valid now. No act of the parties, after the contract is once made, can change its legal effect from legal to illegal, or from illegal to legal. All that took place after the contract was made is admissible for the purpose of showing what the intention of the parties were at the time the sale was made for future delivery.

The whole transaction was what is known as "hedging" and is a legitimate business. Not only was it legitimate but it was a business arrangement of the greatest importance. There is nothing to show gambling, there is no evidence to support the theory of trading upon margins.

We respectfully submit that the lower court was in error in granting the motion to exclude the evidence of the plaintiff and directing the jury to return a verdict for the defendant.

*D. E. Crawley* and *J. G. Smythe,* for appellee.

Taken as a whole the plaintiff's testimony shows that the transactions complained of were his own and purely gambling transactions. Section 2303, Code of 1906; Section 1913, Hemingway's Code, prohibits dealing in cotton futures. This statute has been upheld many times by our supreme court. We call the court's attention to a few cases. *Lemonius* v. *Mayer,* 71 Miss. 514; *Isaacs* v. *Silverburg,* 87 Miss. 185; *Wells* v. *Austin,* 107 Miss. 279.

Contracts not enforcible under the law cannot be made so by any such flimsy subterfuge as is undertaken in this case. This was in no sense a hedging contract but was a future contract plain and simple. Hedging is a gambler's term.

The proof in this case, we contend, shows that the Alexander Mercantile Co. at the time of this alleged transaction sold and parted with to N. M. Falk, all of the cotton which it had on hand, to-wit, four hundred bales, two hundred on the 17th of December, 1919, and two hundred

on the 19th of December, 1919. Having parted with its product, the Alexander Mercantile Company could not hedge against a rise in price, having nothing against which to hedge.

The plaintiff in this case throughout his own testimony recognizes the transaction complained of as his own, though trying to characterize them as transactions of the Alexander Mercantile Company. The testimony and the exhibits show these transactions to have been deals in cotton futures, pure and simple and with no intention or expectation on the part of the plaintiff or any one else to make delivery of the cotton so sold.

Under the testimony in this case and the rules of the cotton exchange of New Orleans, January 25th was the last day for delivery of cotton theretofore sold for January delivery. The plaintiff in this case carrying out his cotton future deal resold these futures in the early part of the month of January, without consulting Alexander Mercantile Company.

The transactions complained of in this case are cotton future deals, pure and simple, and the trial court made no error in granting the peremptory instructions.

SMITH, C. J., delivered the opinion of the court.

This is a suit in which the appellant seeks to recover a loss sustained by him on two contracts for the sale of four hundred bales of cotton which he claims to have made at the request and for the benefit of the appellee. When the appellant rested his case in the court below, the evidence introduced by him was on motion of the appellee excluded, and a verdict and judgment rendered for the appellee.

The appellant is a cotton broker, and the appellee is engaged in the mercantile business, and as an incident thereto buys cotton from producers and sells it on the market. Both parties are located and doing business at Kosciusko.

In December, 1919, the appellant purchased from the appellee four hundred bales of cotton, which for reasons unnecessary to set forth could not then be shipped out of Kosciusko and sold in New Orleans, La., for sale in which market it was purchased. The appellee then sold through brokers in New Orleans, on the New Orleans Cotton Exchange, four hundred bales of cotton for future delivery for the purpose of hedging against any loss he might sustain because of any decline in the price of spot cotton before he could sell that purchased from the appellee. This New Orleans sale was by means of two contracts of two hundred bales each, and was made stating the evidence most strongly for the appellant, pursuant to an agreement between the appellant and the appellee made at the time of the purchase of the four hundred bales of cotton by the appellant from the appellee that, if the appellant would purchase the cotton, he might sell an equal amount in New Orleans for future delivery in order to hedge against any decline in the price of that purchased from the appellee, and that the appellee would protect him from any loss that he might sustain on account thereof. The appellant claims that he intended to comply with his new Orleans contracts by delivering to the purchaser therein the four hundred bales of cotton purchased by him from the appellee. No cotton, however, was delivered under these contracts, but they were settled in the usual way by the appellant paying the difference in price arising out of the rise of the market price above that at which he had contracted to sell.

It is manifest from the evidence, which is too voluminous to be here set out, that the actual delivery of cotton under the New Orleans contracts was not contemplated, and that the settlement thereof was in accord with the parties' original intention relative thereto. This being true, these contracts come within the condemnation of section, 2303, Code of 1906 (Hemingway's Code, section 1913), and chapter 118, Laws of 1908 (Hemingway's

Code, section 1914 et seq.) Section 2303, Code of 1906 (Hemingway's Code, section 1913), provides:

"A contract for the purchase or sale of a commodity of any kind, to be delivered at a future date, the parties not intending that the commodity is to be actually delivered in kind and the price paid, shall not be enforced by any court; nor shall any contract of the kind commonly called 'futures' be enforced, nor shall a contract in this section mentioned be a valid consideration, in whole, or in part, for any promise or undertaking," etc.

It may be true, and for the purpose of this discussion it will be assumed, that the contracts made in New Orleans for the sale of the four hundred bales of cotton were made for the purpose of hedging against any loss which the appellant might have sustained by a decline in the price of cotton before he could sell that which he had purchased from the appellee, and it may be, as counsel for the appellant seem to contend, that such a contract is not a wagering contract, and consequently is valid at common law, although it was the intention of the parties that the commodity therein sold was not to be delivered, but that the settlemen to be made under the contract was the payment of the difference in price of the commodity arising out of the rise and fall of the market price above or below the contract price therefor, but with the common law we have here no concern, for the case is controlled and must be decided by the statute hereinbefore set out.

*Affirmed.*