ALAMARIS *v.* JNO. F. CLARK & CO.

(Division B. Feb. 13, 1933.)

[145 So. 893. No. 30425.]

Geo. W. & E. J. Currie, of Hattiesburg, for appellant.

Paul B. Johnson, and F. M. Morris, both of Hattiesburg, for appellees.

Argued orally by **E. J. Currie**, for appellant, and **Paul B. Johnson**, and **F. M. Morris**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee is a general commercial partnership, consisting of several persons. The partners, or some of them, hold membership in various of the large stock or commodity exchanges of the country and are engaged in behalf of the partnership as brokers in said exchanges, handling stock and commodities for the customers of such partnership. Among the several exchanges in which

appellee holds membership is the Chicago Board of Trade, and also the New Orleans Stock Exchange. In order to further their business, appellee firm maintains local agencies at many points throughout the country and one of these agencies was, at the dates here involved, located in the city of Hattiesburg in this state.

Appellant is a resident of Hattiesburg and is engaged in the restaurant business. He was not at the time nor was he at any time the owner or holder of grain in store or warehouse; he was not engaged in the business of buying and selling grain, taking and making actual deliveries. He owned no farm or farms nor was he the renter of lands upon which any substantial quantity of grain was grown, nor was he the member of any association of owners or growers of grain, or renters of land.

In May, 1931, appellant gave to the agent of appellees at Hattiesburg three orders each for the sale for July, 1931, delivery of five thousand bushels of corn. These orders were transmitted by appellees' agent to the New Orleans office of appellees and from there to appellees' Chicago office, and the orders were executed as it is termed, by appellees on the floor of the Chicago Board of Trade for appellant's account. The sales prices at which these sales orders were given were approximately fifty-seven cents per bushel. During the last three or four days of July, 1931, the quoted prices for corn on the floor of the Chicago Board of Trade rose suddenly and remarkably to about seventy-two cents per bushel. When this happened appellees' agent called on appellant for additional margins, the amount demanded being approximately two thousand dollars. Appellant was unable to raise the money, and according to appellees' evidence, they were compelled to go upon the market in said exchange and buy fifteen thousand bushels of corn to meet appellant's contracts and were compelled to pay out for appellant's account a difference of more than two thousand dollars. Appellant admits that being un-

able to raise the money to keep his required margins good, he authorized appellees through their said local agent to close him out by the purchase on said exchange of off-setting contracts for a quantity of corn equal to the sales contracts made by him in May.

Appellees thereafter demanded of appellant the payment of the sum of said difference which, to be exact, is two thousand, one hundred sixty dollars and ninety-seven cents; and appellant being unable to raise the money—although willing to pay, as he admits in his testimony if he could secure the money—suit was brought by appellees. Against the action, appellant interposed several defenses, one of which was that the transactions out of which the alleged cause of action arose were wagering contracts and were fictitious operations by which the parties were gambling on the rise and fall of the market. The proof on the part of appellant, together with the circumstances and the reasonable inferences to be drawn therefrom, was to the effect that neither party intended that any corn should be delivered and paid for, but the real intention and understanding at the time was that one party should pay to the other the difference between the contract price and the market price when the later time fixed for delivery arrived. Appellees relied then and rely here on section 1828, Code 1930, and the circuit judge being of the opinion that said section controlled and that appellees under the facts had brought themselves within said statute, a peremptory instruction was granted for appellees, sustaining the action for the full amount sued for and appellant has appealed.

We are called on for the first time to consider, in some measure, the meaning and operation of sections 1828 and 1830, Code 1930, brought forward from chapter 304, Laws 1928. These sections read as follows:

"1828. All contracts of sale for future delivery of cotton, grain, stock, or other commodities (1) made in ac-

cordance with the rules of any board of trade, exchange or similar institution where such contracts of sale are executed and (2) actually executed on the floor of such board of trade, exchange or similar institutions and performed or discharged according to the rules thereof; and (3) when such contracts of sale are made with or through a regular member in good standing of a cotton exchange, grain exchange or similar institution organized under the laws of the state of Mississippi or any other state shall be, and they are hereby declared to be valid and enforceable in the courts of this state according to their terms, provided, that contracts of sale for future delivery of cotton in order to be valid and enforceable as provided herein must not only conform to the requirements of clauses (1), (2) and (3), but must also be made subject to the provisions of the United States cotton futures act, approved August 11th, 1916; provided, further, that if this clause should for any reason be held inoperative then contracts for the future delivery of cotton shall be valid and enforceable if they conform to the requirements of clauses one, two and three of this section."

"1830. Any contract of sale for the future delivery of cotton, grain, stocks, or other commodities, which is to be settled according to or upon the basis of the public market quotations or prices made on any board of trade, exchange or similar institutions, upon which contracts of sale for future delivery are executed and dealt in without any actual bona fide execution and the carrying out or discharge of such contracts upon the floor of such exchange, board of trade or similar institution, in accordance with the rules thereof, shall be null and void and unenforceable in any court of this state, and no action shall lie thereon at the suit of any party thereto."

Leaving aside these two sections, there could be no doubt that the laws of this state, in accord with the laws

of practically every other jurisdiction, would condemn the transactions here in question as being unlawful and unenforceable, taking the evidence introduced in behalf of appellant in this case as being true, together with all the circumstances and inferences in his favor, as we must do when considering the propriety of a peremptory instruction. Our laws both of statute and by decisions of the courts have for generations been to the effect that contracts for future delivery are valid only when the parties intend and agree that the goods are to be actually delivered by the seller and the price therefor paid by the buyer, and that, if under the guise of such a contract the real intent be merely to speculate in the rise or fall of prices and the goods are not to be delivered, but instead one party is merely to pay the other the difference between the contract price and the market price at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager and is null and void, provided, of course, that both parties at the time of entering into the alleged contracts so understand the transaction and so intend. 27 C. J., p. 1053 et seq.; 2 Elliott Contracts, p. 298 et seq. The state of the law, and the judicial opinion respecting such transactions can be found in forceful expressions in such cases as, for instance, Gray v. Robinson, 95 Miss. 1, 48 So. 226; Ascher & Baxter v. Edward Moyse & Co., 101 Miss. 36, 50, 57 So. 299, 303; Weld & Co. v. Austin, 107 Miss. 279, 65 So. 247; Cohn v. Brinson, 112 Miss. 348, 73 So. 59, Ann. Cas. 1918E, 134; Falk v. J. N. Alexander Mercantile Co., 138 Miss. 21, 102 So. 843. The established public policy in this state and the strong public sentiment against transactions and contracts such as has above been mentioned has received perhaps its most vivid and forceful expression in Ascher & Baxter v. Edward Moyse & Co., supra, wherein it was said that "dealing in futures is the begetter of poverty, the companion of embezzle-

ment, the associate of degradation, and it scourges every one whom it touches.''

Mindful as the legislators of this state must have been both in 1928 and in 1930 that the miseries and misfortunes which are brought about by wagering in futures outweigh and are more destructive in their consequences than the combined results of all other forms of gambling, it is not to be admitted, that against all these considerations and against the settled public policy and sentiment in this state persistently maintained even from the beginning of the state's history, the Legislature would suddenly reverse that policy, reverse the law and open the doors to this devastating vice, unless the language of the statute making such a change should be clear and free from reasonable doubt. It would have to clearly appear to us, therefore, that by the sections above quoted the intention was that which is contended for by appellees here, which contention, as we understand it, is that if the broker by the rules of the exchange is required to make actual delivery when called on to do so, although he may never be called on to deliver and that actual delivery of the commodity itself is in fact seldom, if ever required, yet this possibility and liability breathes life in all these gambling contracts and gives them protection and validity under said section 1828.

But instead of the language of the two sections above quoted being clear and unequivocal, with meanings that cannot be mistaken, we think they fall far short of possessing that quality. In this situation and for the purposes of this case, but that purpose alone, we may accept the contention of appellees that the two quoted statutes were intended to bring our laws on the subject into conformity with, but as going no furter than do, the United States Cotton Futures Act, U. S. C. A., title 26, chap. 13 (section 731 et seq.), and the Federal Grain Futures Act, U. S. C. A., title 7, chap. 1 (section 1 et seq.). And so considering the subject we turn to the federal decisions upon

cases arising since those federal statutes were enacted; and there we find that all these decisions recognize that it remains the law, unaffected by those statutes, that "if, however, at the time of entering into a contract for a sale of personal property for future delivery it be contemplated by both parties that at the time fixed for delivery the purchaser shall merely receive or pay the difference between the contract (price) and the market price, the transaction is a wager, and nothing more. It makes no difference that a bet or wager is made to assume the form of a contract. Gambling is none the less such because it is carried on in the form or guise of legitimate trade." Mullinix v. Hubbard (C. C. A.) 6 F. (2d) 109, 111. That principle is disclosed as still being the law in every case cited by appellees, which cases are Gettys v. Newburger (C. C. A.), 272 F. 209, 217; Mullinix v. Hubbard, supra; Avery v. Goodrich, 103 Okla. 156, 229 Pac. 577; Fenner & Beane v. Phillips, 222 Ala. 106, 130 So. 892; Faulk & Co. v. Fenner & Beane, 221 Ala. 96, 127 So. 673; Johnson v. John F. Clark & Co., 224 Ky. 598, 6 S. W. (2d) 1048.

In some of the cases, particularly the one last cited, much weight is given to the fact that the confirmations received by the purchaser from the broker, and which for the purposes of this case we will assume was sufficiently shown in this particular record, recited that the order was received and executed with the distinct understanding that actual delivery is contemplated and that the party giving the order so understands and agrees. Another case along this particular line is Uhlmann Grain Co. v. Dickson (C. C. A.), 56 F. (2d) 525. This precise question and exact situation was present in Weld & Co. v. Austin, 107 Miss. 279, 65 So. 247, and the court held that the stated form or guise presented no serious obstacle as against the actual facts. And this case held also that the knowledge of the local agent of the broker through whom the negotiations and dealings were had was the

knowledge of the principal brokers. And when we turn to the decisions of the Circuit Court of Appeals of our own, the Fifth Circuit, we find the decisions of that court uniform and in harmony with our own cases, beginning with Hyman & Co. v. Hay, 277 F. 898, followed by Chickasha Cotton Oil Co. v. Chapman, 4 F. (2d) 319, 322; and finally by Andrews v. George M. Shutt & Co., 44 F. (2d) 337, 338. In the latter case it was said:

"When the inquiry is whether a contract in question is or is not a wagering one by reason of both parties intending to settle by the payment or receipt of market differences, the language of the contract formally entered into by the Cotton Exchange broker for his customer is not controlling, where evidence as to the acts and correspondence of the parties while the contract was in existence, and as to their course of dealings under that contract and under other similar ones previously existing between them, indicates that the real intention of both parties as to the manner of settling or closing such a contract was different from the intention formally expressed. The intention of both parties that the commodity mentioned was not to be received or delivered, but that the transaction should be settled by the payment of the difference between the contract price and the market price at or before the time fixed in the formal contract entered into by the broker for his customer, may be established by evidence as to the circumstances attending the transactions of the parties under the contract— as to what they did and said in connection with the settling or closing of the transaction. Where there is evidence as to whether both parties did or did not intend that the contract in question would result in the actual delivery of the commodity dealt with, and a phase of the evidence furnishes substantial support for a finding that it was contemplated or intended by both parties that there would be no actual delivery, the question is one of fact for the determination of the jury. James v. Clement (C. C. A.)

223 F. 385; Alex Hyman & Co. v. Hay (C. C. A.), 277 F. 898; Holbrook v. Shepard (C. C. A.), 279 F. 193; Sharp v. Stalker, 63 N. J. Eq. 596, 52 A. 1120; Benson-Stabeck Co. v. Reservation Farmers' Grain Co., 62 Mont. 254, 205 P. 651; Clark v. McNeill (C. C. A.), 25 F. (2d) 247."

We are in accord with the cases Hyman & Co. v. Hay and Andrews v. George M. Shutt & Co., supra, and particularly with the quotation which we have taken from the latter case.

We are of opinion therefore that this case should have been submitted to the jury, under proper instructions, for their decision upon the facts in respect to the issue which we have herein discussed.

Reversed and remanded.