BRADY, Justice.
This is an appeal from the First Circuit Court District of Hinds County, Mississippi, wherein a judgment was denied both litigants in a suit filed by Kohlmeyer & Company for $6,975.75 claimed as a deficiency owing after the liquidation of Rotwein’s account. Rotwein denied liability and sought to recover the sum of $7,797, of which amount $2,500 represented margin deposits made by him and $5,297 represented profits allegedly lost by him as a result of Kohlmeyer’s alleged violation of its fiduciary relationship. The cause was heard by Judge Russell Moore, a jury having been waived.
The basic facts essential to the disposition of this appeal are briefly as follows: Kohlmeyer & Company, appellant, is a brokerage firm engaged in the business of buying and selling stock and commodities for the account of it customers. On April 16, 1963, Rotwein, appellee, executed a written instrument authorizing appellant to act as *770 his broker or agent in the purchase and sale of contracts for the future delivery of commodities.
There is essentially little dispute as to the transactions made for appellee by appellant’s manager, James Allen, or as to the manner in which the transactions were conducted. During the month of May 1963 appellee ordered Allen to purchase three contracts for the future delivery of sugar. These purchases were made by appellant through Kirsch & Company, acting as its agent, the last purchase having been made on May 23, 1963. While other commodity “futures contracts” had been bought and sold by appellant for appellee, the three sugar contracts are the only ones involved in this suit. Prior to, and during the course of the sugar contract transactions, appellee made margin deposits with appellant totaling $2,500. Subsequent to the last of these three purchases, the price of sugar began to decline sharply.
Appellee left for California on May 26, 1963, and appellant’s manager, Allen, was unable to contact him until May 29. At that time Allen advised appellee that the sugar market was down and called upon appellee for additional security against loss, or margin deposits, as was authorized by the Commodity Account Agreement executed by the appellee. On the following Monday, appellee ordered Allen to sell his contracts, but Allen was unable to dispose of them until June 10 due to the fact that the market was “down the limit,” this being the maximum range of fluctuation permitted by the exchange rules.
Appellee testified that he had instructed Allen to sell the contracts if the market showed signs of weakness or decline and that Allen had breached his duty by failing to do so. Allen testified that he was unable to contact appellee for instructions, and that when he finally received appellee’s instruction to sell the contracts he was unable to do so due to the fact that the market was “down the limit” and there were not enough offers to purchase. Appellee was called upon to make additional margin deposits and, having failed to do so, his account was liquidated pursuant to the Commodity Account Agreement. This liquidation resulted in a net loss of $6,975.75 to the appellant, and appellant instituted this suit to collect the deficiency.
The appellee denied liability on several grounds and charged that appellant had violated its fiduciary relationship in that it had not protected the appellee by following his instructions to sell if the market began to decline. Appellee sought recovery of the $2,500 in margin deposits made by him and $5,297 in profits allegedly lost by reason of this failure to follow his instructions. The trial court held that neither party was entitled to recovery, and both parties have appealed.
We discuss first those errors assigned by Rotwein, the appellee and cross-appellant, which warrant discussion. They are:
1. The trial court erred in failing to find that the transactions entered into were within the Mississippi Statute of Frauds.
2. The trial court erred in finding that the agent, manager of Kohlmeyer and Company, and acting as a fiduciary, did all he could to prevent the loss complained of by appellant, Kohlmeyer.
We find no merit in appellee’s contention that the transactions entered into in this case are violative of the Mississippi Statute of Frauds requiring certain contracts to be in writing. Appellee executed a written contract which authorized the appellant brokerage firm to act as his agent in the purchase and sale of “futures contracts.” He gave certain oral instructions to appellant, and the transactions pursuant to these instructions were completely executed by appellant as agent for appellee. The fact that the transactions were fully consummated takes the contract between the appellant agent and the clearing house out of the Statute of Frauds. Miss. Code Annot. § 268 (1956). The balance in the account *771 is money advanced by and owing to appellant by the appellee under the written agreement.
We find no merit in appellee’s contention that appellant violated its fiduciary relationship. The record indicates that the trial judge was accurate in his findings and the conclusion that there was not violation of the fiduciary relationship and no failure on the part of appellant’s agent to be diligent in the performance of his brokerage duties.
The appellant has assigned the following two errors which merit discussion and analysis :
1. The trial court erred in holding that Mississippi Code Annotated section 26 (1956) provides an unconstitutional delegation of legislative powers.
2. The trial court erred in holding that said statute is in violation of the public policy of Mississippi against gambling.
We discuss the above assignments in reverse order.
It can be conceded that there would be merit in the appellee’s claim, which is in conformance with the lower court’s holding, that the transactions involved are in violation of the public policy of the State of Mississippi, if it were based upon this Court’s construction of the statutory provisions prior to the passage of the 1956 amendment of section 26. Up until that time it had been the absolute policy of the State of Mississippi that contracts for the future delivery of commodities were unenforceable unless the parties intended actual delivery in kind. This Court has held, and properly so, that the language of all previous statutes was insufficient for this Court to have held that the legislature had intended to change the law which had been laid down under our statutes and by the decisions of this Court since the beginning of our statehood. See: Clay v. T. H. Allen & Co., 63 Miss. 426 (1886); Isaacs v. Silverberg, 87 Miss. 185, 39 So. 420 (1905); Ascher & Baxter v. Edward Moyse & Co., 101 Miss. 36, 57 So. 299 (1911); Alamaris v. John F. Clark & Co., 166 Miss. 122, 145 So. 893 (1933); Laird, Bissell & Meeds v. Capps, 224 Miss. 361, 80 So.2d 49 (1955).
However, the statute as amended in 1956, Mississippi Code Annotated section 26 (1956), is a clear departure from the former policy in that it abolishes the need for intent of actual delivery under certain conditions. The statute reads as follows:
All contracts of sale for future delivery of cotton, grain, stock, or other commodities (1) made in accordance with the rules of any board of trade, exchange or similar institution where such contracts of sale are executed; and (2) actually executed on the floor of such board of trade, exchange or similar institutions and performed or discharged according to the rules thereof; and (3) when such contracts of sale are made with or through a regular member in good standing of a cotton exchange, grain exchange or similar institution organized under the laws of the State of Mississippi or any other state shall be, and they are hereby declared to be, valid and enforceable in the courts of this state according to their terms, provided, that contracts of sale for future delivery of cotton in order to be valid and enforceable as provided herein must not only conform to the requirements of clauses (1), (2) and (3), but must also be made subj ect to the provisions of the United States Internal Revenue Code of 1954, subchapter D; provided, further, that if this clause should for any reason be held inoperative then contracts for the future delivery of cotton shall be valid and enforceable if they conform to the requirements of clauses (1), (2) and (3) of this section; provided, further, that if contracts of sale for future delivery of cotton, grain, stock, or other commodity shall conform to all of the requirements set forth above in this section, then the same shall be valid and enforceable in all the courts of this *772 state, notwithstanding that at the time of execution of such contracts that either or both of the parties thereto did not contemplate or intend that the same should be consummated by the actual delivery and receipt of the commodity specified. The plain intent of this section, while declaring unlawful all transactions conducted in and through a “bucket shop” as hereinafter defined, is to make lawful and enforceable and to withdraw from the provisions of the gaming and wagering laws, all transactions executed upon and in accordance with the rules of a legitimate cotton, grain, stock or other commodity exchange or board of trade whether the intent of delivery of the actual commodity was present or not and this article shall be liberally construed at all times so as to effectuate this purpose. (Emphasis added.)
This Court has repeatedly held that it is solely within the province of the legislature to determine the state’s public policy. In the case of Durham v. Durham, 227 Miss. 76, 84-85, 85 So.2d 807, 809 (1956), we note the following statement:
We fully recognize that matters of public policy are for the legislature to declare when it has acted, and it is not for the courts to question the wisdom of any constitutional declaration of public policy by the legislative body.
See also Golding v. Armstrong, 231 Miss. 889, 97 So.2d 379 (1957).
We hold that the above section 26 is not in violation of the public policy of the State of Mississippi since it is solely within the province of the legislature to determine public policy.
Finally, we reach the question of whether or not section 26 is an unconstitutional delegation of legislative power.
The trial judge made the following statement in his opinion:
The Court is of the opinion that the Legislature, by providing that such contracts would be valid when made in accordance with the rules of any Board of Trade, Exchange, or similar institutions, is an unlawful delegation of the powers of the Legislature.
Appellee contends that the legislature has no control over these various exchanges and therefore cannot prevent them from making rules which might be arbitrary, capricious, unreasonable or against our public policy.
It is true that Mississippi cannot regulate any of the exchanges because none are located within her borders. However, these exchanges are subject to regulation by our sister states, wherein said exchanges are located, or the Federal Government, or both. It is apparent that the legislature intended to legalize certain “futures contracts” and it felt that transactions executed on an exchange were subject to certain regulation. It manifested its approval of these transactions and the methods of regulation. The legislature had an opportunity to examine the rules and procedures of the various exchanges and the extent of regulation, and it could have exempted, and can exempt in the future, any exchange which it feels is not being properly regulated or has adopted arbitrary rules. We hold that the legislature did not make an unlawful delegation of legislative process by simply providing that contracts made on exchanges, which it evidently feels are being properly regulated, are enforceable. As previously stated, the legislature, having the constitutional right, could have withdrawn, and can in the future withdraw, approval of any exchange that, in its judgment, is not being properly regulated.
Appellee contends that section 26 is class legislation, and violates due process of law in that the legislature has made an arbitrary distinction between brokerage houses in this state which have connections with an exchange, and those which do not. We do not agree for the reason that any brokerage house that can qualify may obtain the benefits which the legislature has *773 Seen fit to grant. In other words, any person or firm interested in dealing in commodities’ futures may do so by complying with the legislative intent and requirements. In a proper case we could be concerned with the problems and practicalities of fulfilling the requirements of a statute, hut we find no necessity for concern in this case. We hold that the legislature had the power to make the classification in this case. As was stated in State ex rel. Attorney General v. Land, 231 Miss. 529, 562-563, 95 So.2d 764, 778 (1957):
The question of classification is primarily for the Legislature. It does not become a judicial question except for the purpose of determining whether it is clearly unreasonable. Great liberality has always been indulged in the matter of classification. It must be looked at from the standpoint of the Legislature enacting it. Hence there is a presumption in favor of legislative classification, of the reasonableness and fairness of legislative action, and of legitimate grounds of distinction. * * *
We think that the reasonableness of the classification in section 26 between transactions consummated on an exchange, and “bucket shop” transactions, it so obvious that it warrants no discussion.
Appellee contends that the method of handling purchases and sales on the New York Coffee and Sugar Exchange when the market is “down the limit” amounts to a lottery in violation of this state’s gambling laws. However, the court must assume that the legislature was familiar with the rules and procedures of the various exchanges and approved of them. The transactions in this case were made “in accordance with the rules of” and were “actually executed on the floor” of an “exchange,” as provided by section 26. Since section 26 further provides that such transactions are withdrawn “from the provisions of the gaming and wagering laws,” appellee’s contention is without merit
As is true in many cases, we are unable here to arbitrarily set at rest the sundry issues and implications which are ably urged in briefs of counsel. Insofar as the basic issues presented in this case arc concerned, we are led to the inescapable conclusion that the legislature properly exercised its prerogative and the constitutional rights of the litigants here have not been violated. Therefore, we are forced to reverse the portion of the judgment of the lower court wherein it was held that section 26, is violative of the State’s public policy and that it is an unconstitutional delegation of legislative process, and to enter judgment here for the appellant in the amount claimed. In all other respects the judgment is affirmed.
Affirmed in part and reversed in part, and judgment entered for appellant.
RODGERS, JONES, PATTERSON and INZER, JJ., concur.