### Knox v. Clark et al.

(Division A. Dec. 14, 1936. Suggestion of Error Overruled Jan. 25, 1937.)

[171 So. 340. No. 32340.]

196

**Creekmore, Creekmore & Capers**, of Jackson, for appellant.

**Loving & Loving**, of Columbus, for appellees.

198

**McGowen, J.**, delivered the opinion of the court.

John F. Clark, Jr., and others, a partnership composing the firm of John F. Clark & Co., brought an action at law against Rush H. Knox, the appellant, to recover three hundred and fifty dollars, an alleged overpayment by check drawn by Clark & Co. in favor of Knox.

By an amended declaration, the transaction was set forth in detail.

To the declaration, Rush H. Knox pleaded the general issue, and filed a special plea setting up that the transaction arose out of contracts of sales and purchases for future delivery of cotton, to be settled upon the basis of the public market quotations, and alleged that said contracts were executed and dealt in without any actual or bona fide execution thereof, and without any intent to make delivery of the cotton covered by such contracts, but with the intent of settling same by the rise and fall of the price on the cotton exchange.

On the request of the appellees, the court below granted them a peremptory instruction for the debt and interest, and judgment was rendered thereon accordingly.

Two witnesses were introduced. For the appellees, Waldo, the office manager in New Orleans, of Clarke & Co., testified that they received the following letter, on his letter head, from Rush H. Knox.

"Jackson, Miss. July 3, 1930.

"John F. Clark & Co.,

"New Orleans, Louisiana.

"Gentlemen:

"Please let me have check for my excessive margin, and charge the same to my account.

"Yours very truly,

"R. H. Knox."

In the office of the appellees, the following notation was made on the above quoted letter: "Mail check for $350.00, chg. S. B. acct. stox. O. K. Mott."

Appellees' check was made for the sum of three hundred and fifty dollars, payable to Rush H. Knox, received and cashed by him, and the check was offered in evidence.

Waldo testified that, from the books, they had on that date, the account of "Ross M. Knox" of Mobile, Ala., was charged with this three hundred and fifty dollars, and that Rush H. Knox was not charged therewith. The original ledger sheets were introduced in evidence, over the objection of Rush H. Knox, showing this charge of three hundred and fifty dollars to Ross M. Knox, and Waldo testified that it was a mistake to have so charged it, and that the initials "S. B." referred to a Mobile account, and that this mistake was not discovered until October 14, 1930, when the three hundred and fifty dollar item was charged to Rush H. Knox. So far, Waldo had established that, by mistake, a sum of money sent to Rush H. Knox had been charged to Ross M. Knox, but he had not established prima facie that Rush H. Knox was not entitled thereto under the terms of the letter by which the check was mailed to him. The ledger account showed that, on that date, Rush H. Knox had to his credit the sum of two thousand nine hundred seventeen dollars and four cents; that from that account and another, Rush H. Knox had one hundred fifty bales of cotton against which, under their rules, there should

be charged, and the account reduced in the sum of two thousand two hundred thirty-two dollars and fifty cents. Waldo further testified that the margin clerk had charged Rush H. Knox with five dollars per bale on his cotton, or seven hundred fifty dollars margin, and, with that added, Rush H. Knox lacked sixty-five dollars and forty-six cents of having enough margin. He testified that his firm had transactions with Rush H. Knox from November, 1929, to September, 1930, when they finally closed his account and sent him a check for about fifty-two dollars in full settlement; that this business was being conducted legitimately on the Cotton Exchange of New Orleans; that Rush H. Knox was a cotton planter, and that his firm and Rush H. Knox had twenty-seven deals and executed contracts in which no commodity had ever been tendered or delivered by either party.

Rush H. Knox testified that he kept no books, and that, on July 3, 1930, he had the appellees' office here, by telegraph, to request, from the New Orleans office, the amount of his balance, and that, from the figures then given him, he had an ample margin to take some money therefrom which he needed, and that he never learned that a mistake had been claimed until long after his account had been closed. That he had no cotton to sell, and that "there was to be no delivery of cotton," that it was just purely a market deal to be settled by the rise and fall of the market, and that, as to the three hundred and fifty dollars received by him, Clark & Co. owed him more than that at the time. Rush H. Knox admitted that, on March 4, 1930, he signed, without reading it, what he termed a signature card which, among other things, contained this language: "Stop orders, as well as open orders, are effective until canceled by me/us. Any transaction made for my/our account is subject, in all respects, to the constitution, rules, by-laws and customs of the Exchange on which executed,

and of its clearing house, or clearing association. Actual delivery of all commodities bought or sold for my/ our account is contemplated, and I/we so understand and agree.''

The appellant, Rush H. Knox, contends that the court below erred in granting the peremptory instruction, because the appellees did not make out a prima facie case against him without the introduction of their books showing the entire transaction. He further contends that all the evidence, together with that of Waldo, made an issue of fact to be settled by a jury, as to whether the dealings constituted a gambling contract within the purview of sections 1828, 1830, Code of 1930, as construed by this court in the case of Alamaris v. John F. Clark & Co., 166 Miss. 122, 145 So. 893, 895, notwithstanding the contractual part of the signature card above quoted.

We think it is quite manifest that the appellees did not, and could not, make out a prima facie case against appellant without going into the entire transaction. To do this, it was essential that appellees offer their books in evidence.

Both the appellant and the appellees rely upon the case of Adler v. Searles, 86 Miss. 406, 38 So. 209, in which this court said that, ''if the plaintiff had to resort to a contract, executed or executory, growing out of an illegal business, to make out his case, then the defendant could successfully have resisted the claim. But the illegal business had been settled, and a new and independent element supervened—the payment by mere mistake of the one thousand dollars—and the defendant admits that it was paid by mistake. He does not deny this. No resort was necessary to the bookkeeping to show it.''

In the case at bar, the illegal business had not been settled when the check was paid, and the account of Rush H. Knox was not closed until nearly two months

later, and if gambling it was, it continued during that time, and if mistake it was, on the part of the appellees, it was an integral part of the transactions then being carried on between the parties. Suppose Rush H. Knox had paid to Clark & Co. five hundred dollars excessive margins on that date, could it be doubted that he could not recover this sum from Clark & Co. for the reason that it was a part of that contract, whether legal or illegal?

The books of the appellees were absolutely essential to make out a prima facie case. The dealings of the parties were in fieri, and long afterward completed.

As to whether the contract in the case at bar is illegal, we think, in view of all the evidence, is a question for the jury.

In Alamaris v. John F. Clark & Company, supra, this court held that, "if, however, at the time of entering into a contract for a sale of personal property for future delivery it be contemplated by both parties that at the time fixed for delivery the purchaser shall merely receive or pay the difference between the contract (price) and the market price, the transaction is a wager, and nothing more. It makes no difference that a bet or wager is made to assume the form of a contract. Gambling is none the less such because it is carried on in the form or guise of legitimate trade."

Reversed and remanded.