HYMAN MERCANTILE Co. *et al. v.* KIERSKY *et al.*

(In Banc.  Nov. 11, 1940.)

[198 So. 574.  No. 34739.]

(In Banc.  Dec. 8, 1941.  Suggestion of Error Overruled January 12, 1942.)

[4 So. (2d) 881.  No. 34739.]

Hutchison & Hutchison, of Summit, and Lotterhos & Travis, of Jackson, for appellant.

A. A. Cohn, of Brookhaven, and Cassidy & McLain, of McComb, for appellees.

Argued orally by **F. J. Lotterhos**, for appellant, and by **W. G. McLain**, for appellee.

**Griffith, J.**, delivered the opinion of the court on motion.

The Hyman Mercantile Company is a corporation with a capital stock of $45,000 par value. The two complainants own $11,500 of this stock, or approximately one-fourth. They filed their bill complaining that the owners of the other three-fourths of the stock were unfriendly to complainants, and that the others were participating in the mismanagement of the affairs of the company in such divers ways, specifying them, that the value of the stock would soon be destroyed. Complainants prayed that a receiver be appointed to take over all the assets of the corporation, to convert them into cash, and thereupon that complainants should have their distributive share of the proceeds in proportion to their stock ownership. There are no other complainants.

The defendants answered and denied every allegation as to mismanagement or which otherwise would justify the relief prayed. On the hearing the court decreed in favor of the complainants, appointed a receiver and directed the receiver to take charge and to proceed according to the prayer of the bill. Defendants demanded an appeal with supersedeas, and called upon the trial judge to fix the amount of the supersedeas bond; and the judge being of the opinion, as it appears, that such a supersedeas would be controlled by Section 29, Code 1930, fixed the amount of the bond at $90,000, or double the amount of the entire capital stock.

A motion has been filed here by the defendants for an allowance of the appeal with supersedeas secured by a bond more reasonable in amount and more in harmony with the justice of the situation than the disproportion-

ately large bond stipulated by the trial judge, and the defendants invoke the provisions of Section 35, Code 1930, as being those which should be applied in the case now presented.

Were complainants claiming the entire property and had recovered a decree therefor, an appeal with supersedeas would be controlled by Section 29, Code 1930. But the utmost that the two complainants could recover here would be the one-fourth, approximately, of the total of all the assets of the corporation, this total being shown to amount to $70,503.88, whence the one fourth would be approximately $18,000. It is true that a receiver would take charge of the entire property, but a receivership is not an end to be attained but is only a means to the end by which complainants' rights in the property shall be preserved, and this right, as already shown, extends only to an approximate one fourth thereof.

If, then, a supersedeas bond is given by the defendants which will secure the complainants up to the sum of $18,000, plus the margin hereinafter provided, there will be amply preserved to them, in case the appeal should fail, everything which in any event and as a matter of substantial right they could obtain were no appeal prosecuted, and we think they have no just right to demand a bond which would cover the whole property in three fourths of which the complainants have no equitable ownership. We will resort, therefore, to the provisions of Section 35, Code 1930, and will allow the appeal with supersedeas when the defendants shall give a supersedeas bond in the sum of $23,000, which is double the par value of the complainants' stock conditioned that the principal and surety or sureties thereon shall be bound to pay unto complainants, and to no others than complainants, any loss which may happen to them as a proximate consequence of the detention of the assets of the corporation from the hands of the receiver pending the appeal in case the appeal should be unsuccessful, with costs if any,

but to be void in case the appeal should be sustained, the bond to be approved in the manner as other appeal bonds in chancery are generally approved.

So ordered.

**Anderson, J.,** delivered the opinion of the court on the merits.

Appellees filed their bill in the Chancery Court of Pike County against appellant, a mercantile corporation, and two of the stockholders and officers of the corporation, W. K. Ransom and his wife, Gladys Ransom, to have the corporation dissolved and liquidated and for that purpose a receiver be appointed to take charge. There was a trial on bill, answer and proofs resulting in a decree granting the relief prayed for. From that decree the corporation and all of its stockholders, except the complainants, appeal.

The corporation was organized, started and carried on for many years by John Enos, deceased. All of the stockholders, except the complainants, are related to him by either blood or marriage. The stock consists of 450 shares, par value of $45,000. The stockholders related to John Enos either by blood or marriage are W. K. Ransom and wife, Gladys Ransom, the Estate of W. M. Davis, John Mercier, W. F. Cunningham and his wife. The complainants, Bernard Kiersky and Miss Pauline Kiersky, own $11,500 of the stock par value, and the other stockholders own the balance of $33,500.

The bill charges that for more than forty years Bernard Kiersky had been an officer and employee of the corporation, that sometime prior to the first of January, 1938, he was vice-president and salesman in the store. That at the January, 1938, meeting of the stockholders he was not re-elected vice-president and not re-employed as a salesman. The bill does not charge that the corporation is insolvent but that it is headed for insolvency on account of the mismanagement of its stockholders, directors

and officers who consist entirely of members of the John Enos family. The bill charged and the evidence shows that at the January, 1938, meeting of the stockholders Mrs. Ransom was elected president and her husband secretary-treasurer of the corporation and that they took charge and managed its affairs up to the filing of the bill in this cause and the trial in the chancery court. The charges of mismanagement, which the evidence supported in some degree, are as follows: That the plan of the Enos family is to manage the affairs of the corporation so as to "freeze out" the Kierskys and acquire their stock; that Mrs. Ransom during one year received from the corporation a salary of $120 per month without doing anything much to earn it, and that without authority from the stockholders she raised the salaries of two clerks in the store; that Ransom is unfit to manage the business because while a citizen of Birmingham, Alabama, employed in a brokerage business there, through "fraudulent trading" he lost for his employer something like $30,000 which his surety, United States Fidelity & Guaranty Company, had to pay for him, that later he was released from his debts through bankruptcy proceedings; that he came to Pike County and married Miss Gladys Enos, and in 1938, without any previous experience, in connection with his wife took charge of and managed the affairs of the Hyman Mercantile Company; that during such management he engaged in gambling in cotton future contracts for the company consisting of "selling cotton on call"; that the Hyman Mercantile Company owns $8,000 stock in the Cotton Compress Company at Summit; that Ransom refused to permit the stockholders of the Compress Company to elect his wife on the Board of Directors thereby neglecting the interest of the Mercantile Company; that Ransom in and around Summit is unpopular, resulting in antagonism against him and the business among other business men of that place as well as the public; that Bradstreet & Dun changed their rating of the corporation after Ransom took charge; that the books of the

company are kept by Mercier, who is not competent for that purpose; that Ransom is extending credit in substantial amounts to customers who are unworthy of it; that the company owns considerable farming lands and Ransom is unfamiliar with managing such property; that he is extravagant, buying goods for the company unnecessarily.

The Chancellor appointed Simmons, a certified public accountant of Natchez, to audit the affairs of the corporation and Denman of McComb to value its lands. The evidence was without conflict that they performed their services ably and thoroughly and that the result was that the corporation was not "headed for" insolvency but on the contrary that since the Ransoms and the others associated with them had taken charge of its affairs it was going the other way. The audit showed that on the 31st day of January, 1940, the total assets of the company was $70,503.38 and its total liabilities $10,383.22, thereby showing a surplus of approximately $15,000. It showed that in 1938 there was a net loss of $507.90, while in 1939 there was a net profit of $5,608.27; that the cotton on call, charged to have been a gambling contract, showed a net profit of $834.13; that there were on hand at the time of the audit 733 bales of cotton which had been sold on call but not finally disposed of. At the time of the audit there was a net profit on this cotton according to the market price of $3,979.40. The evidence showed without dispute that cotton sold on call contemplated actual delivery of the cotton and a settlement according to the market price.

There is no merit in the charge that the sale of cotton on call is gambling in futures in violation of Section 959, Code of 1930. The evidence shows that cotton sold on call contemplated actual delivery and not a settlement alone on the market price quotations, and that was the character of transaction involved here. "When the real intent of the parties is simply to speculate on the rise and fall of prices, and the goods are really not to be de-

livered'' it is a gambling transaction. Cohn v. Brinson, 112 Miss. 348, 73 So. 59, 62, Ann. Cas. 1918E, 134; Alamaris v. Clark & Co., 166 Miss. 122, 145 So. 893; Knox v. Clark, 177 Miss. 195, 171 So. 340.

The affairs of a corporation are managed by its stockholders, directors and officers; minority stockholders having grievances at the way affairs of the corporation are managed should first make application to them for correction, failing in that respect they have the right to resort to a court of equity for dissolution, under the principles laid down in Brent v. Sawmill Co., 103 Miss. 876, 60 So. 1018, 1022, 43 L. R. A. (N. S.) 720, Ann. Cas. 1915B, 576, 13 Am. Jur., Corporations, pages 1164, 1295, 1296 and 1297.

In the Brent case the court used this language: ''It is settled in this state, where there is an absence of a statute on the subject, that a court of equity, at the instance of a creditor, has the jurisdiction to appoint a receiver because of fraudulent mismanagement of the directors of a corporation. Benjamin v. Staples, 93 Miss. 507, 47 So. 425. We see no sufficient reason why it should not also be settled that a court of equity in this state, when it shall appear that by gross mismanagement of the affairs and misapplication of the property or funds of a corporation by the directors, or other officers in control, the rights of the stockholders, as well as the creditors, are being put in jeopardy, or when it shall be necessary to protect the interests of such stockholders or creditors and preserve the assets of the business injuriously affected by such mismanagement or of fraud in the management, may appoint a receiver to take charge of the business of the corporation, and in proper cases, under the orders of the court and in the progress of the receivership, wind up such business. Therefore, in the present case we decide that the chancery court has the jurisdiction to appoint a receiver at the instance of the minority stockholders, to take charge of the business of the corporation, and if it is shown to the court to be necessary to wind up such

business. The bill, with the amendment thereto, is sufficient to require answers of the appellees.''

The appellant argues that Sections 4173, 4174 and 4175, Code of 1930, which were adopted after the Brent case was decided, became the exclusive authority for the dissolution and winding up of the affairs of a domestic corporation at the instance of one or more of its stockholders or creditors. Section 4173 provides, among other things, that the stockholder or creditor shall have the right to resort to the chancery court for the dissolution of the corporation and the liquidation of its affairs when it ''becomes insolvent or ceases to be a going concern, or while insolvent sells its franchises in whole or in part.'' We do not decide this question because under the Brent case, and the other authorities cited, in order for minority stockholders in a domestic corporation to put an end to the corporation there must be either insolvency or mismanagement which must lead to insolvency. In the present case there is no claim of insolvency and the evidence is overwhelming to the effect that the present management is not leading to insolvency.

It follows from these views that the bill should have been dismissed.

Reversed and judgment here.