ARTHUR N. NIGRO *vs.* JOSEPH CONTI & others. [1]

Middlesex. March 5, 1946. — May 3, 1946.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Contract*, What constitutes, Construction. *Sale*, Contract of sale, Of stock. *Equity Jurisdiction*, Specific performance.

A certain writing containing all the necessary terms of a complete contract for the sale of substantially all the capital stock of a restaurant corporation was construed by this court as intended by the parties to be presently binding notwithstanding a provision that if a municipal licensing commission "approves . . . [of the buyer], a formal agreement between the parties is to be drawn within a reasonable time after said approval."

A provision of a contract for the sale of substantially all the capital stock of a restaurant corporation, that the contract "is to be binding until the . . . [municipal licensing] commission makes its decision" of approval or disapproval of the buyer, did not mean that the contract should cease to be binding upon the commission's acting, but that, if the commission should approve of the buyer, the contract was to remain binding and the parties, in accordance with another provision, were to proceed to draw "a formal agreement" "within a reasonable time."

The mere existence of an agreement for the sale of all the liquor of a restaurant corporation, separate from and collateral to a contract between the same parties for a sale of substantially all the capital stock of the corporation, was not inconsistent with the immediate taking effect of the contract respecting the stock.

A contract for the sale of closely held corporate stock not purchasable in the market will be specifically enforced in equity.

In a suit in equity to compel the defendant specifically to perform a contract to sell to the plaintiff substantially all the capital stock of a corporation, a provision of a decree for the plaintiff requiring the defendant to resign the offices of treasurer and director held by him in the corporation was not improper although there was no provision in the contract respecting such a resignation.

BILL IN EQUITY, filed in the Superior Court on February 27, 1945.

The suit was heard by *Dillon*, J.

---

[1] An appeal in a companion case by Frank Mayo against Joseph Conti and Elena Restaurant, Inc. has not been argued and is waived.

*W. F. Henneberry,* for the plaintiff.

*S. H. Lewis,* (*H. L. Barrett* with him,) for the defendants Joseph Conti and another.

QUA, J.　In the Superior Court the plaintiff obtained a decree for specific performance of an agreement in writing by which the defendants Conti and Mayo contracted to sell to the plaintiff their shares of stock in the defendant Elena Restaurant, Inc., for $10,000. The trade seems to have been made on the basis that all the stock in the company was to be included at $100 a share, but the decree allows a deduction of $100 for one share not owned by either defendant. The defendant Mayo has apparently been willing to carry out the agreement on his part. The defendant Conti has refused to carry it out on his part. Only the defendants Conti and Elena Restaurant, Inc., appeal from the decree. The evidence is reported.

The agreement in writing was as follows: "Agreement made this 8th day of February 1945 between Frank Mayo and Joseph Conti holders of the stock of Elena Restaurant, 657 Cambridge Street, Cambridge, and Arthur Nigro in consideration of $100.00 deposit paid forthwith. The above named parties agree: 1. That the said Mayo and Joseph Conti will sell their shares of stock in said Restaurant to said Nigro for $10,000.00. 2. The said deposit of $100.00 is to be reimbursed to Nigro if the Cambridge Licensing Commission does not approve of him as a prospective buyer of said premises. 3. The said agreement is to be binding until the Cambridge Licensing Commission makes its decision. 4. If the Cambridge Licensing Commission approves of Mr. Nigro as buyer, a formal agreement between the parties is to be drawn within a reasonable time after said approval. 5. The said Frank Mayo and Joseph Conti agree that they will not attempt to sell their shares of stock while this agreement is in effect. Joseph Conti　　Frank Mayo　　Arthur N. Nigro."

The principal contention of the appealing defendants is that this writing of February 8 was never intended to bind the parties to anything; that it was designed merely to be shown to the licensing commission for the purpose of obtain-

ing its approval of the plaintiff as a buyer, which in fact
was granted on February 12; and that the parties did not
intend to be bound until the "formal agreement" referred
to in paragraph "4" should be drawn up and signed.

The trial judge made no express findings of fact, but it is
evident from the decree that he did not accept the defend-
ants' contention, and after an examination of the whole case
we agree with his conclusion. The writing in question con-
tains all the necessary terms of a complete contract for the
sale and purchase of the stock. It specifies definitely the
parties selling and buying, the subject matter of the sale, and
the price. It is signed by all the parties concerned. Para-
graph "5" was very evidently intended to go into effect at
once. It is difficult to see how the instrument can be con-
strued so as to give to paragraph "5" the effect of a present
contract while the other paragraphs, particularly para-
graph "1," expressed with equal positiveness, are regarded
as still only in the stage of preliminary negotiation. Para-
graph "3" says the "agreement is to be binding until the
Cambridge Licensing Commission makes its decision." This
also imports a present contract. We do not construe this
paragraph as meaning that the agreement ceases to be bind-
ing the moment the commission acts. That would render
the instrument futile. We construe paragraphs "2," "3,"
and "4," taken together, as meaning that the agreement is
made conditional upon the approval of the commission, and
that, if the commission does not approve, the agreement
ceases to be binding, but if the commission does approve the
agreement remains binding, and the parties are to proceed
within a reasonable time to embody its terms in a more
formal instrument providing in detail a convenient method
of carrying it into effect. The inclusion of a provision for
the later drawing up of a formal memorial of the terms of an
agreement, written or oral, is not necessarily inconsistent
with an intent to be presently bound to the agreement in its
original informal state. *Beach & Clarridge Co.* v. *American
Steam Gauge & Valve Manuf. Co.* 202 Mass. 177, 181–182.
*Libbey* v. *Tidden,* 192 Mass. 175. *Nickerson* v. *Bridges,* 216
Mass. 416. *Bines* v. *Rosen,* 263 Mass. 562, 564–565. *Duggan*

v. *Matthew Cummings Co.* 277 Mass. 445, 449–450. *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, 216. *Kilham* v. *O'Connell*, 315 Mass. 721, 724. Am. Law Inst. Restatement: Contracts, § 26.

The defendants stress the fact that all parties to the instrument of February 8 testified that it had been agreed that in addition to paying $10,000 for the stock of the corporation the plaintiff was to pay "dollar for dollar" for all unopened liquors which the corporation had on hand. This may seem to a lawyer a curious arrangement, inasmuch as these liquors belonged to the corporation, all or substantially all of whose stock was being sold and bought for $10,-000. The reason for this arrangement seems to have been that the plaintiff was uncertain as to the amount of liquor on hand and preferred to pay for it separately upon taking an inventory rather than to include in the price of the stock such sum as the defendants might assert the liquors were worth. The selling of the restaurant was being arranged by laymen who probably thought little of the separate identity of the corporation and considered the owners of the stock as the owners of the assets. The evidence is well open to the construction that the agreement for the sale and purchase of the liquors was regarded by the parties as separate from and collateral to the agreement for sale and purchase of the stock of the corporation. It must be assumed that the judge so found. The existence of such a collateral agreement is not inconsistent with the immediate taking effect of the written agreement of February 8 with reference to the stock, if the parties intended that agreement to take effect immediately. See *Durkin* v. *Cobleigh*, 156 Mass. 108, 109; *Glackin* v. *Bennett*, 226 Mass. 316, 319; *Western Newspaper Union* v. *Dittemore*, 264 Mass. 74, 78, and cases cited; *Montuori* v. *Bailen*, 290 Mass. 72, 74; *Pollak* v. *Brush Electric Association*, 128 U. S. 446, 454–456; Williston on Contracts (Rev. ed.) §§ 642, 872. What may be the rights of the defendants with respect to the liquors is a question not before us in this suit, in which the defendants have filed no counterclaim, and in which there is no evidence as to the present quantity or condition of the liquors or of any other facts which would

justify imposing a condition with respect to the liquors upon the granting of relief to the plaintiff with respect to the stock.

There is no doubt that equity will enforce specific performance of an agreement to sell closely held stock not purchasable in the market. *Legro* v. *Kelley,* 311 Mass. 674, 676.

The defendants also complain of a provision in the decree requiring the defendant Conti to resign the offices (treasurer and director) that he holds in the defendant corporation. This provision seems unusual. The agreement contains no reference to such resignation. On the other hand, it seems apparent that in view of Conti's attitude of absolute refusal to carry out his contract, and the subsequent litigation, it would imperil the rights of the plaintiff to allow Conti to remain in key positions in the corporation in which he no longer has any interest and in which all but a nominal interest has passed to his adversary, and it might even negative the objects of the decree. Where his own interests or desires interfere with the full enforcement of contract rights which he has voluntarily granted to another, his own interests or desires should give way. A court of equity may adopt all necessary, reasonable, and lawful means to make its decrees fully effective and to accomplish the objects intended. Pomeroy, Equity Jurisprudence (5th ed.) § 109. See *Laine* v. *Aarnio,* 265 Mass. 374, 376–377; *Jubinville* v. *Jubinville,* 313 Mass. 103, 108–109.

The decree must now necessarily be modified as to the time for performance, and as so modified it is affirmed with costs.

*So ordered.*