## R. H. LINDSAY CO. v. GREAGER.

### No. 4562.

United States Court of Appeals
Tenth Circuit.

May 1, 1953.

Rehearing Denied June 8, 1953.

Charles J. Moynihan, Montrose, Colo., for appellant.

Harold C. Greager, Fort Collins, Colo., for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

R. H. Lindsay Company, a corporation, brought this suit against O. H. Greager to specifically enforce a contract for the sale and purchase of wool and for damages. The complaint alleges than on October 29, 1950, the defendant agreed to sell, and the plaintiff agreed to buy, the defendant's 1951 wool clip, not to exceed 38,000 pounds, at 80¢ per pound; that the purchase and sale agreement was reduced to writing and signed by the defendant;[1] that the defend-

---

1. The written memorandum was attached to the complaint and the material portions thereof read as follows:

"No buyer or employee of R. H. Lindsay Company has authority to change the printed terms of this contract.

"In consideration of One dollars ($1.00) received by me/us as part payment I/we have sold to R. H. Lindsay Company of Boston, Massachusetts, my/our entire 1951 clip of wool, not to exceed 38,000 lbs., from about 3,000 ewes, 500 yearlings, 75 fine and grade bucks which are all the sheep I/we now own and which are in the County of San Miguel, State of Colo., the price to be Eighty cents (80¢) per pound, * * *

* * * * * * *

"I/we agree to shear the above wool at Norwood, Colo., on or about May 1st and to deliver the wool to said R. H. Lindsay Company, or their representative free on board cars at Montrose, Colo., not later than May 10th, 1951.

"The balance of the purchase money to be paid at time of delivery of the wool, payment by draft on R. H. Lindsay Company.

* * * * * * *

"Signed O. A. Greager,
      Address Norwood, Colorado.
"Witness G. A. Hanson."

ant notified the plaintiff that he would refuse to deliver the wool in accordance with the agreement. The material part of the answer denied the existence of the contract. It was also alleged that contract was void under the Statute of Frauds.

To eliminate the necessity of proving the value of the wool for the purposes of the action the parties stipulated that value to be $1 per pound. It was further stipulated that the defendant would deliver his wool to the plaintiff; that the plaintiff would pay the defendant 80¢ per pound therefor; that in the event the court should find that there was no effective contract of purchase, the plaintiff would pay the defendant an additional 20¢ per pound for the wool; and that in the event the purchase contract was upheld, the plaintiff would not be further obligated to the defendant. Pursuant to the stipulation, the wool was delivered to the plaintiff and the defendant was paid 80¢ per pound therefor.

Upon trial, the court concluded that the plaintiff did not sustain its burden of proof "that a mutually joint oral contract of purchase and sale of defendant's wool was made, or intended to be made," and that the plaintiff's right to relief rested upon the wool purchase contract. The court refused to enforce the written contract because it lacked mutuality, and entered judgment for the defendant in accordance with the stipulation. This appeal is from that judgment.

The action was clearly one for the enforcement of an oral sale and presents two questions. 1. Was there an oral agreement between the parties for the purchase and sale of defendant's wool? 2. Was there a sufficient memorandum signed by the party to be charged to satisfy the Colorado Statute of Frauds? We answer both questions in the affirmative.

The evidence is not in substantial conflict. The defendant was a wool grower and G. A. Hanson was a wool purchasing agent for the plaintiff. The agent testified that he and another wool buyer met the defendant in a cafe in Norwood, Colorado and talked to him about purchasing his 1951 wool clip. The defendant then invited them to his home where the discussion continued. The plaintiff's agent told the defendant that he was paying 75¢ to 80¢ for wool, and the defendant asked the agent if he would pay that much for his wool. After some dickering as to the price, the agent told the defendant that he would pay him 80¢ for his wool, and the defendant replied that that was a good price, and that he would talk with his wife. The defendant left the room, returned and said, "I will sell my wool for that price if you will pay it," and the agent replied, "All right, I will pay it." Whereupon the defendant said, "Proceed to make your contract out." The agent asked the defendant if he desired an advance payment, but the defendant replied that he did not need the money because he did not want to pay interest on it. The agent further testified that he told the defendant he would pay him 80¢ per pound for the wool and pay for it when it was delivered at Montrose, Colorado. The written memorandum was then made out, signed by defendant and a copy delivered to him. This testimony was corroborated by the other wool buyer.

The defendant testified that he met plaintiff's agent and buyer at a cafe in Norwood; that they went from the cafe to plaintiff's home where, after some negotiations, the agent, who was also a wool grower, said that he had sold his wool for 80¢ and asked, "Would you take 80¢ for your wool?"; that after some hesitation he told the agent, "You just write up that contract"; and that he then went to the kitchen and told his wife that he had contracted his wool for 80¢. Defendant further testified that he refused an advance on his wool at that time.[2] On March 28, 1951, defendant's at-

2. Defendant's testimony is as follows:
"Q. Will you tell the Court all of the circumstances leading up to your signing that instrument?—A. I met Mr. Hanson and Mr. Kelley at the Lone Pine Cafe, not by appointment, just happened that way. Naturally, the conversation drifted into wool. He said, 'We would like to come down to the house to see you.' I said, 'O.K.' After we arrived at the house, the subject was on wool. I don't remember, just kinda by-play, so to speak, and Mr. Hanson says, 'I feel kinda weak today. Would you take 78

torney wrote to the plaintiff stating that: "After careful consideration of said contract it is my opinion that Mr. Greager is not bound thereunder because, among other things, the contract lacks mutuality under Colorado law, and is therefore not binding upon either party. Accordingly, I have advised Mr. Greager that he is privileged to withdraw and he has elected to do so. His notice of withdrawal is enclosed herewith." The notice of withdrawal signed by the defendant stated that "Inasmuch as you have not accepted, ratified or executed the wool purchase contract, dated October 29, 1950 * * * you are hereby notified that I withdraw from said contract." The defendant did not deny that Hanson had offered him 80¢ for his wool, or that he had agreed to sell for that price. He sought to repudiate the sale because the plaintiff had not signed the memorandum.

■ The Uniform Sales Act effective in Colorado, states "A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price." '35 C.S.A. Ch. 143A, Sec. 1; 46 Am.Jur., Sales, Sec. 2. We think, considering all the facts and circumstances in the case, there was a definite offer by plaintiff to purchase the wool at a price of 80¢ per pound and an unqualified acceptance of that price by the seller. The oral agreement of purchase and sale was complete, certain and definite and so considered by the defendant until several months later. The finding of the trial court to the contrary is clearly erroneous. It is true that the parties intended that the terms of the agreement should be incorporated in the so-called "Wool Purchase Contract" but this was not a condi-

tion to the validity of the offer and acceptance. The document was only a memorial of the completed oral agreement and did not affect its validity. 1 Restatement, Contracts, Sec. 26; Rosenfield v. U. S. Trust Co., 290 Mass. 210, 195 N.E. 323, 122 A.L.R. 1210, Annotation 1217; Nigro v. Conti, 319 Mass. 480, 66 N.E.2d 353, 165 A.L.R. 752, Annotation 756. It is quite obvious that the memorandum executed by the defendant was for the purpose of satisfying the Statute of Frauds.

This leaves the question of the sufficiency of the memorandum signed by the party to be charged, to satisfy the Statute of Frauds. '35 C.S.A. Ch. 143A, Sec. 4(1) provides:

"A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

■ Generally speaking, a memorandum is sufficient if it sets forth with reasonable certainty the names of the parties to the contract, a description of the goods to which the contract relates and the essential terms and conditions constituting the oral contract, including the consideration. 1 Restatement, Contracts, Sec. 207; North American Seed Co. v. Cedarburg Supply Co., 247 Wis. 31, 18 N.W.2d 466, 159 A.L.R. 250; Block v. Sherman, 109 Ind.App. 330, 34 N.E.2d 951; Micheli v. Taylor, 114

cents for your wool today?' I said, 'No, I would not.' And there had been a little off conversation. I don't recall, and then he said, 'Would you take 80 cents for your wool?' I hesitated. He says, 'That is what I sold mine for.' He reached over into his form book. He said, 'I sold mine for 80¢. Here's my contract.' I thought for a moment, there was no further conversation for just a little while. I said, 'You just write up that contract.' While he was writing it up, I went to the dinette—not the kitchen—and told the Missus, my wife, 'I am contract-

ing my wool at 80 cents.' That was the extent, and the contract was signed, and it was my copy—it was handed to me. Mr. Hanson did say, 'Do you want an advance?' I said, 'No;' there was no money paid and no money offered to be paid by either one of these two plaintiffs.
* * * * * * *
"Q. Well, they must have offered to pay you 80 cents if you had contracted it at 80 cents?—A. I thought they did. I thought they did. I changed my mind when I saw that signature."

Colo. 258, 159 P.2d 912; Eppich v. Clifford, 6 Colo. 493. All the essential provisions of the purchase and sale agreement are found in the memorandum. The defendant contends that the written memorandum is insufficient because it does not contain any requirement that the plaintiff purchase the wool. It provides that the plaintiff will pay by draft, the amount due on the purchase price when the wool is delivered. This is clearly understandable to a sheep man and imports an obligation to purchase.[3]

The judgment is reversed and the cause remanded with instruction to enter judgment for the plaintiff pursuant to the stipulation of the parties.

BRATTON, Circuit Judge (dissenting).

Plaintiff never became committed to purchase the wool unless the commitment was made in the course of the verbal discussion which preceded the filling out of the so-called wool purchase contract and the signing of it by the defendant. And unless plaintiff did make such commitment there was a complete lack of mutuality of contract. Therefore, the crucial question in the case was whether in the course of the verbal discussion a firm commitment was made on the part of plaintiff to purchase the wool. Three witnesses testified in respect to that question. They were G. A. Hanson, vice president and a director of plaintiff, William A. Kelley, a representative of plaintiff in the purchase of wool in Colorado, and the defendant. Hanson and Kelly each testified to statements by Hanson in the verbal discussion which if made constituted a firm commitment of purchase. But the defendant testified in minute detail concerning the discussion and his testimony disclosed that no statement was made which constituted a firm commitment of purchase. He further testified that he signed the so-called wool purchase contract; that he thought Hanson signed it for plaintiff as purchaser; that he learned later that Hanson had merely signed it as a witness to the signature of defendant; that he did not "anticipate" making an oral contract; and that he thought it was a written contract.

The learned trial court of long experience found that in the discussion "no firm commitment was made on behalf of plaintiff to purchase defendant's 1951 wool clip." It is my view that this critical and dispositive finding of fact is supported by substantial evidence; and that it is not clearly erroneous, due regard being had for the opportunity of the court to observe the witnesses while testifying, to appraise their credibility, and to weigh their testimony. Accordingly, I would affirm the judgment.

---

**3.** In the Micheli case it is said [114 Colo. 258, 159 P.2d 913]:

"As we declared in Eppich v. Clifford, 6 Colo. 493, the memorandum to comply with the statute, 'must show on its face, or by reference to other writings, first, the names of the parties, vendor and vendee; second, the terms and conditions of the contract; third, the interest or property affected; and fourth, the consideration to be paid therefor,' and further, 'If the names and intention of the contracting parties can be determined with reasonable certainty from the language of the instrument, and a valid contract is thereby disclosed, specific performance may be decreed thereon.' The memorandum in the Eppich case is strikingly similar to that in the case at bar, and it was there held that the agreement to purchase, and names of the parties were sufficiently shown. Here, the words 'received * * * one Dollar and other valuable consideration for my entire interest' import obligation to sell, and the words, 'purchase price balance of $7000 to be paid,' import obligation to purchase."