MILLER et ux. *v.* HERRMANN

[No. 184, September Term, 1962.]

592

Decided February 7, 1963.

The cause was argued before Brune, C. J., and Henderson, Hammond, Horney and Sybert, JJ.

*Frank P. Flury*, with whom was *Donald P. McLaughlin* on the brief, for the appellants.

*James G. Hollis*, with whom were *William L. Kahler* and *De Blasis & Kahler* on the brief, for the appellee.

Hammond, J., delivered the opinion of the Court.

The appellants, Charles M. Miller and Roberta C. Miller, his wife, who sold a piece of ground improved by a building to the appellee, Omer W. Herrmann, resisted a suit against them for specific performance on the grounds (a) that Mr. Miller, at the time he signed the contract of sale, lacked the mental capacity to understand the nature and consequence of his act, and (b) that the agent of the appellants delivered the contract to the purchaser after she had been notified not to do so. The chancellor found that Mr. Miller knew precisely what he was doing and that the contract had become binding before the Millers changed their minds and inquired whether it would be possible to reclaim it, and decreed specific performance.

In this Court the sellers claim the chancellor erred in refusing to permit lay witnesses to state they thought Mr. Miller was

incompetent when he signed the contract and that the act of their agent in delivering the contract constituted such a gross injustice to them "that a court of equity should not lend its dignity to the transaction by ordering the extraordinary, and, in this case, the harsh remedy of specific performance."

The Millers owned and lived in a one story building, apparently designed as a salesroom for souvenirs and for the exhibition of animals, on a five-acre tract of land adjacent to Route 301. Mrs. Smith, a real estate saleswoman who had learned from Mr. Miller in the late summer that he and his wife were on the verge of separation and that they wanted to sell their property, went to the hospital with Mrs. Miller to see Mr. Miller who had been operated on for the repair of a leg muscle which had torn from a bone in the knee. The Millers, Mrs. Miller's parents, who held a mortgage on the property, and Mrs. Smith talked over the problems incident to a sale—whether the property should be sold "as a commercial property or as a residence" and whether they should undertake to have it zoned or sell it subject to rezoning. Mr. Miller had thought that the sales price should be $12,000; but after further consideration of the sales commission that would be payable, it was decided to ask $18,000. Mrs. Smith then was given an exclusive, written listing. The next day Mrs. Miller called her to inquire whether they should reserve an acre at the corner of the lot for themselves and sell the rest. Then she said they concluded that the value of the acre was such its deletion from the sale would reduce the sales price so much they had better leave the listing as it was and sell all the property.

On November 13, 1960, Mr. Herrmann, the appellee, signed a contract to buy the property for $14,000 in cash, $1,000 being paid as a deposit, and the balance to be paid at settlement "within 30 days from the date of acceptance" by the owner. Mrs. Smith took the contract to the Millers. Again her parents were present, and the matter was discussed around the dining room table. Mrs. Smith pointed out that the sale was for cash with quick settlement. Mr. Miller read over the contract and, when asked by Mrs. Smith if he had any questions about it, replied, according to her, "Well, it is very clear * * * the price is fourteen thousand dollars; we settle in thirty days; your com-

mission is ten per cent." He signed the contract and tossed it across the table to Mrs. Miller and told her to sign.

When Mr. Herrmann signed the contract, the word "none" had been written in on it opposite the printed language "Property to be sold subject to an existing tenancy as follows." This would have meant that the Millers would have to move just before Christmas, so, at Mrs. Smith's suggestion, the word "none" was stricken out and the words "60 days or sooner" were written in. The Millers put their initials opposite these words. Mrs. Smith told the Millers that from what she had been told, she was sure that the change would be agreeable to Mr. Herrmann.

Mrs. Smith left with the contract, and an hour or so later called Mr. Crandall, the real estate agent whose prospect Mr. Herrmann was, to tell him that it, with the minor change, had been accepted by the Millers. Mr. Crandall called Mr. Herrmann that evening and received his assent to the minor change.

About eight o'clock the next morning Mrs. Miller telephoned Mrs. Smith and asked, in the words of Mrs. Smith, "if the contract had been accepted," or, in the words of Mrs. Miller, "if she could stop the contract." Mrs. Smith's reply was that she would have to call Mr. Crandall. She did call Mr. Crandall, who told her of Mr. Herrmann's assent to the change and of his offer to evidence his agreement by initialling it (as he did at the earliest opportunity). Mrs. Smith then called Mrs. Miller back and told her it was too late, the contract had been accepted. Mrs. Miller replied that she had been afraid that this would be so. Her desire to "stop" the contract had been based on the fact that the Millers had decided again that they would like to reserve the corner acre of the tract for themselves and renegotiate the sale of the balance to Mr. Herrmann. Mr. Crandall delivered the contract to Mr. Herrmann soon after he had talked to Mrs. Smith. The Millers refused to convey the property, and Mr. Herrmann promptly filed his bill for specific performance.

We think the chancellor was right in decreeing specific performance. There was no testimony of real significance that Mr. Miller was not fully competent at all pertinent times. The refusal of the chancellor to let Mrs. Miller and her father and

mother state in so many words that they thought Mr. Miller was of unsound mind when he executed the contract was justified. Each was permitted to say what he had observed of Mr. Miller's actions and reactions. Their testimony went only as far as that his leg was in pain, he had been given a sedative, that he became very irritated when his father-in-law chided him for not having told that the taxes on the property had not been paid, and that he was emotionally upset and wept for a long time on the night he signed the deed.

This was not enough either to show mental incapacity or amount to a basis from which a lay witness properly could launch an opinion as to incapacity. "But a non-expert witness is qualified to express an opinion as to a testator's mental capacity only where the acts and circumstances, of which the witness had personal knowledge, are sufficient to form a basis for the formation of rational opinion." *Doyle v. Rody,* 180 Md. 471, 481; *Masius v. Wilson,* 213 Md. 259; *Giardina v. Wannen,* 228 Md. 116.

We pass to a consideration of the adequacy and effect of the contract. The sellers and the purchaser had had a meeting of the minds on all the essential terms of a sale and purchase of a piece of real estate, fully expressed in a writing, on the evening of November 13, 1960, when Mr. Herrmann accepted the contract he had previously signed, with the unessential and relatively insignificant modification as to the existing tenancy. This was not a situation where no contract was intended until a final draft evidencing all terms and conditions had been signed or initialled by both sides, as in *Binder v. Benson,* 225 Md. 456; rather, it was intended to be, and was, complete when Mr. Herrmann reiterated his agreement to buy under the slight modification proposed by the Millers. After that it was too late for them to call off the bargain they had made. *Baker v. Dawson,* 216 Md. 478, 485.

The memorandum of the contract would have gratified the demands of the statute of frauds in a suit by Herrmann against the Millers if it had been signed only by them. In addition to their signature, as the parties to be charged, it contained the name of the other party, a description of the land to which the contract related and the terms and conditions of all the prom-

ises constituting the contract, and by whom and to whom the promises were made; and this is sufficient to make the contract enforceable against them. *Forsyth v. Brillhart,* 216 Md. 437, 440; *Sinclair v. Weber,* 204 Md. 324; *Engler v. Garrett,* 100 Md. 387, 397; 2 Corbin, *Contracts,* Sec. 396 (P. 356).

The agreement to sell before us was, under the testimony, fair, reasonable and certain in all its terms and, therefore, properly specifically enforced against the sellers.

*Decree affirmed, with costs.*