336 So.2d 745 (1976)
W.E. AUSTIN et al., a partnership d/b/a Austin Farms
v.
J.M. MONTGOMERY and R.L. Maxwell, d/b/a V & M Cotton Company.
No. 48722.
Supreme Court of Mississippi.
August 10, 1976.
Rehearings Denied August 31, 1976.
*746 Townsend, McWilliams & Holladay, Drew, for appellants.
Lyon, Crosthwait & Terney, Indianola, Wells, Gerald, Brand, Watters & Cox, Jackson, for appellees.
Before INZER, SMITH and LEE, JJ.
LEE, Justice, for the Court.
Appellees, J.M. Montgomery, Jr. and R.L. Maxwell, d/b/a V & M Cotton Company, filed a bill of complaint in the Chancery Court of Sunflower County seeking temporary and permanent injunctions against appellants, W.E. Austin, Gary Lynn Austin, Janet Sue Austin, and Deborah J. Austin, d/b/a Austin Farms, to prohibit them from disposing of their 1973 cotton crop on certain lands and seeking specific performance of a contract involving same. From a decree making permanent the temporary injunction previously issued and ordering specific performance of the contract, appellants appeal here.
The bill of complaint charged that (1) on February 26, 1973, the parties executed a written contract for the sale by appellants of their 1973 cotton crop to appellees on Farms B-251, B-33, B-163, B-220, B-230 and the Adams place, as shown by the ASCS records on file in Indianola, Mississippi, which lands approximated twenty-five hundred (2,500) acres, for a top price of thirty cents (30¢) per pound; (2) appellants advised appellees in June, 1973, there would be an overplant of three hundred twenty-three (323) acres which appellees considered to be covered by the contract, and that appellees bought the overplant of 323 acres in June, 1973, for forty-four cents (44¢) per pound; (3) on July 28, 1973, appellants notified appellees that they refused to deliver the 1973 crop and considered there to be no contract because their February 26, 1973, offer of sale was not accepted; (4) appellees had previously sold the Austin cotton to Carolina Textile Mills, it was impossible to obtain cotton elsewhere, and appellees would be required to default on their contract to Carolina Textile Mills; (5) the price of cotton had increased to seventy cents (70¢) or more per pound and as a result of the refusal to deliver the cotton, appellees would suffer irreparable damage.
Appellants answered that (1) negotiations were entered into for the sale and purchase of the cotton, (2) appellees prepared the written contract which appellants took to their attorneys for inspection, and on which they made certain changes; (3) appellant, W.E. Austin, executed the instrument for all appellants and left it with appellees; (4) the contract was never executed and accepted by appellees, and appellants withdrew the offer of sale on July 28, 1973; (5) no oral or written contract was made for the sale of the 323-acre overplant; (6) four hundred twenty (420) acres of cotton on Farm B-251 were sold by appellants to Dunavant Enterprises, Inc., Memphis, Tennessee; and (7) appellants offered to sell the cotton to complainants at the prevailing market price when the cotton was delivered to the compress.

I.
Appellants contend the trial court erred in holding that any contract to purchase and sell was made since appellees failed to overcome the required burden of proof.
*747 The evidence for appellees showed that prior to February 23, 1973, appellees and appellant, W.E. Austin, acting for the partnership, negotiated a contract for the sale and purchase of all cotton on Farms B-251, B-33, B-163, B-220, B-230 and Adams place, being approximately 2,500 acres of land, for the top price of thirty cents per pound. On February 23, 1973, the contract was reduced to writing, Austin picked up the contract for the purpose of carrying it to his lawyer for examination, and after some suggested changes, the contract was returned to appellees on February 26, 1973. Austin signed the contract and took an executed copy with him.[1] On June 11, Austin carried maps and certifications from the ASCS office on file in Indianola to appellees' office and discussed the acreage, telling appellee Maxwell that he had planted three thousand two hundred and forty-three (3,243) acres, that four hundred twenty (420) acres of the Bradshaw land (acquired after February 26, 1973, and combined with Farm B-251) was included therein, and that there was an overplant of 323 acres. Detailed notes and figures of the conversation were made. Subsequently, Austin returned to appellees' office and asked for a copy of the contract, saying that he had lost his copy. On July 12, Austin contacted appellees and told them he was going to sell the overplant to another buyer, unless appellees paid him 44¢ per pound for the cotton by eight o'clock the next morning. There had been some discussion about a higher price for the overplant, and appellees agreed to pay 44¢ per pound for the overplant.
Austin admitted he signed the contract on February 26, 1973, and left it in appellees' office, but he denied he took a copy with him. He admitted he went to appellees' office on June 11 with his maps and ASCS certifications and again on June 17, when he asked for a copy of the contract, but denied he said he had lost his copy. He also denied there was any conversation or negotiations for the purchase and sale of the 323-acre overplant. There was a sharp issue as to whether or not the document was signed by appellees prior to July 28, 1973, the date appellants notified appellees they would not deliver the cotton for the reason that their offer of sale had not been accepted.
The contract in question is a sales transaction involving the forward contracting of cotton, whereby a farmer sells cotton to be produced by him either before it is harvested or before it is planted. Such contracts have become common in Mississippi and other cotton producing states.
Mississippi Code Annotated § 75-2-201 (1972) (UCC), provides as follows:
"(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." (Emphasis added)
Mississippi Code Annotated § 75-2-204 (1972) (UCC), provides further:
"(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

*748 (3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."
The Supreme Court of Georgia had the identical question before it in the case of Harris v. Hine, 232 Ga. 183, 205 S.E.2d 847 (1974). A similar contract to the one in question was executed March 9, 1973, and the price per pound of cotton increased from thirty cents (30¢) in March to seventy cents (70¢) in October of 1973. The Uniform Commercial Code, as adopted in Georgia, contains the same sections under consideration here. In affirming the judgment for an injunction, the Georgia Court said:
"Growing crops, including cotton, are `goods' within the contemplation of the above section (see Ga.L. 1962, pp. 156, 173; Code Ann. § 109A-2-105(1)). It is undisputed that the defendant H.E. Harris signed the writing on behalf of H.E. Harris & Sons. A quantity was sufficiently shown for an `output' contract for the sale of all the defendants' cotton produced on their 825 acres (see Ga.L. 1962, pp. 156, 185; Code Ann. § 109A-2-306(1)). The document indicated that an agreement to sell had been made.
Clearly this was more than the mere unaccepted offer the defendants contended it to be, and was sufficient to satisfy the requirements of the Uniform Commercial Code statute of frauds for an enforceable contract." 232 Ga. at 186, 205 S.E.2d at 849-850.
After Austin signed the contract, appellees placed it in their vault and reviewed it at different times. From February 26 until July 28 appellants did nothing to indicate there was a non-acceptance of the contract by appellees, and, in fact, confirmed the contract and acceptance thereof by their words and actions. Likewise, the conduct of appellees indicated an acceptance of the contract.
In Fanning v. C.I.T. Corporation, 187 Miss. 45, 192 So. 41 (1939), the Court stated the rule as follows:
"The rule is that acceptance of a contract as binding upon a party may be shown by his actions, and any definite and unequivocal course of conduct disclosing that the party has acceded or assented to it, is as binding on him as had he endorsed his assent in formal writing. And although he may have stipulated that the contract shall not be binding on him until formally accepted by him in writing, that stipulation may be waived by him and is waived when he acts upon and under the contract by conduct of the nature aforementioned. 1 Restatement, Contracts, § 21 et seq. The conduct of appellee, as shown by the undisputed testimony, brings the contracts within the stated rule." 187 Miss. at 52, 192 So. at 43.
Courts in other jurisdictions have held that contracts executed by one party alone and delivered to the second party are valid. Tow v. Miners Memorial Hospital Ass'n., Inc., 305 F.2d 73 (4th Cir.1962); R.H. Lindsay Co. v. Greager, 204 F.2d 129 (10th Cir.1953) cert. den. 346 U.S. 828, 74 S.Ct. 50, 98 L.Ed. 353 (1953); Means v. Dierks, 180 F.2d 306 (10th Cir.1950); Moss v. Cogle, 267 Ala. 208, 101 So.2d 314 (1958); Sewell v. Dolby, 171 Kan. 640, 237 P.2d 366 (1951); Miller v. Herrmann, 230 Md. 590, 187 A.2d 847 (1963); Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855 (1958).
We are of the opinion that the evidence amply supports the chancellor's finding that the instrument dated February 26, 1973, was accepted by appellees and that it is a valid and binding contract. Certainly we cannot say that he was manifestly wrong in so holding.

II.
Appellants contend that the forward contract for future delivery of cotton is void under Mississippi Code Annotated § 87-1-15 (1952) as a futures contract.
*749 The February 26 contract provided that the cotton be delivered and stored in compresses at Greenwood and Indianola with all samples to be delivered to appellees. When the cotton sold is to be delivered by the seller, the sale does not constitute gambling in futures. In Hyman Mercantile Company v. Kiersky, 192 Miss. 195, 4 So.2d 881 (1941), the Court said:
"There is no merit in the charge that the sale of cotton on call is gambling in futures in violation of Section 959, Code of 1930. The evidence shows that cotton sold on call contemplated actual delivery and not a settlement alone on the market price quotations, and that was the character of transaction involved here. `When the real intent of the parties is simply to speculate on the rise and fall of prices, and the goods are really not to be delivered' it is a gambling transaction." 192 Miss. at 203-204, 4 So.2d at 883.
See Alamaris v. Clarke & Co., 166 Miss. 122, 145 So. 893 (1933).
In R.N. Kelly Cotton Merchant, Inc. v. York, 494 F.2d 41 (5th Cir.1974), the Court had this question before it in considering a 1973 cotton contract similar to the one here. Appellants argued that the contracts for future delivery of cotton were void under the Georgia statute which invalidates commodity futures contracts where no actual future delivery is contemplated. The section is practically identical to Mississippi Code Annotated § 87-1-15 (1972). The Court held that the contracts did not violate the Georgia statute and that they constituted valid obligations.
We are of the opinion that the contract here is not void under the Mississippi statute and that there is no merit in this assignment of error.

III.
Appellants contend that there was no memorandum in writing of a contract for the overplant of 323 acres, that the alleged contract was within the Statute of Frauds, and that the court erred in decreeing delivery to appellees of all cotton produced on the overplanted acreage.
Appellees argue that the 323-acre overplant was contained in and was a part of the February 26, 1973 contract since it called for the sale of "all and only the cotton produced" from the farms therein described. The question, therefore, is whether or not the 323-acre overplant was covered by the February 26 contract or whether it was the subject of a subsequent oral contract. It is admitted by appellees that no signed memorandum or agreement was executed by appellants subsequent to February 26. In determining this question, the following acts and conduct of appellees are material:
(1) Appellants charged in the bill of complaint that "Defendants then sold and Complainants purchased [June, 1973] the overplant of 323 acres for 44 cents per pound. Complainants aver that the cotton from said additional acreage so purchased from the Defendants constituted overplant on the farms hereinabove described."
(2) Appellee Montgomery testified:
(a) "Well, I told him [Austin] that if he planted an extra amount of acres that would amount to several hundred, in view of the fact that cotton had risen so dramatically in the last few weeks or month, that he was entitled to maybe to get a better price on what he planted over and above that... ."
(b) "He [Austin] said that afternoon that he wanted to know if I was going to give him 44¢ for this cotton, or he was going to sell it when the market opened the next day. I called him before the market opened the next day and booked all of the overplant, which I considered the rest of that crop and I booked it at 44¢ , I entered that extra acreage on a book that I keep and I did not see Mr. Austin after that."

*750 (c) "I bought 323 acres myself, [June, 1973] simply because I did not want any part of that crop getting out of our control. After I bought it I called Mr. Walter Montgomery, who is the boss over at Carolina Textile, and with whom I usually deal when I am selling them crops, and told him .. ."
(3) Appellee Montgomery wrote Spartan Mills[2] on June 13, 1973:
"This will confirm our conversation on the telephone concerning the additional 323 acres on the Austin crop. I had earlier told Mr. Austin that should he plant an additional amount of acres that would be several hundred acres, I thought he was entitled to take advantage of the price increase on the additional acreage. Normally, when there is very little difference in the acreage figures, we accept it as a normal variation. However, since I did earlier make this promise to him, I feel obligated to figure these separately. In order to protect us and you and to make sure that the entire crop would be handled by us, I booked the additional 323 acres at 44.00 cents. I did not want you to think that you were obligated on these additional acres. I merely bought them to keep the entire crop coming to us."
(4) On March 9, 1973, appellees confirmed sale to Carolina Textile Company of cotton on 2,500 acres of Austin Farms.
In June, 1973, when Austin took his maps and ASCS acreage certifications to appellees, he told them that he had planted 3,243 acres. Of this acreage, 420 acres were sold on June 11 to Dunavant Enterprises, Inc. [Bradshaw land acquired after February 26, 1973], and 323 acres constituted overplant, leaving 2,500 acres. This was the acreage set forth in the written contract of February 26.
We are of the opinion that the 323-acre overplant was not included in the February 26 contract and that any agreement relating to sale and purchase of the cotton on the 323 acres constituted a separate contract. The chancellor was manifestly wrong in not so holding.
Mississippi Code Annotated § 75-2-201 (1972) (UCC) requires that a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable unless there is a memorandum which evidences a contract (1) for the sale of goods, (2) signed by the party against whom enforcement is sought, and (3) specifying a quantity. Derden v. Morris, 247 So.2d 838 (Miss. 1971). The evidence discloses without dispute that no memorandum was made regarding the 323-acre overplant, and, thus, we conclude that the contract, if made, was an oral contract, was within the statute of frauds and was void.

IV.
Appellants contend that the trial court erred in admitting testimony of the general reputation of appellees for truth and veracity in the community in which they lived.
The trial court admitted over objection testimony of three witnesses that the general reputation of the appellees for truth and veracity in the community in which they lived was good. The admission of such testimony constituted error.
In Millers Mutual Fire Insurance Company of Texas v. King, 232 Miss. 260, 98 So.2d 662 (1957), the insured sued his insurer for fire losses sustained, and the insurer alleged that the insured burned or procured the burning of the insured property. The trial court admitted over objection testimony that the general reputation of the insured was good and that his reputation for honesty and integrity was good. In holding that such evidence was error, and in reversing the case, this Court said:
"It is a general rule of law, adhered to in all but a few jurisdictions, that a party to a civil action is not entitled to bolster his case by introducing evidence of his good *751 character even if his adversary charges him in the pleadings with committing a legal wrong, or even an act for which he might be subjected to criminal prosecution, such as conspiracy, embezzlement, fraud, incendiarism." 232 Miss. at 266, 98 So.2d at 663.
See also DeLaughter v. Womack, 250 Miss. 190, 164 So.2d 762 (1964); Leinkauf & Strauss v. Brinker, 62 Miss. 255 (1884).
There is nothing in the pleadings or the evidence that brings the present case from under the general rule stated in Graves v. Johnson, 179 Miss. 465, 176 So. 256 (1937):
"It is the general rule that, in an ordinary civil case, parties may not support their position by offering testimony as to their good character or reputation, and it is only when good character or reputation is the issue, such as in slander, false imprisonment, and like cases, that such evidence is admissible." 179 Miss. at 484, 176 So. at 262.
However, we do not think that the error constitutes reversible error here, and we do not think its admission affected the result in this case.
In Illinois Central RR Co. v. Williams, 242 Miss. 586, 135 So.2d 831 (1961), the Court held:
"It was error to admit this opinion evidence, but it was not reversible error. The chancellor admitted it for whatever it might be worth, and apparently attached no particular importance to it. We do not think its admission affected the result in the case. Rule 11 of this Court provides that a judgment shall not be reversed for the improper admission of evidence, `unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." 242 Miss. at 606, 135 So.2d at 839.
For the reasons stated, this case is affirmed, except that it is reversed and rendered as to the 323-acre overplant and remanded to the lower court for the purpose of fixing damages for the wrongful suing out of the injunction relating to the 323-acre overplant.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED TO THE LOWER COURT FOR FIXING DAMAGES.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON and BROOM, JJ., concur.
SUGG and WALKER, JJ., took no part.

Appendix I to follow.

*752 APPENDIX I

"SALE AND PURCHASE AGREEMENT FOR 1973 COTTON CROP

This contract, entered into between Austin Farms of
Indianola, Miss., hereinafter referred to as Producer and
Seller, and V & M Cotton Co., Inverness, Miss., covers cotton
produced by the Producer and Seller for the 1973 crop year. The
above named Producer and Seller agrees to sell all and only the
cotton produced from approximately 2,500 acres planted in
cotton for the 1973 crop year on B-251, B-33, B-163, B-220,
B-230, & Adams. Place as shown at the ASCS records on file in
Indianola, Miss.
The Producer and Seller agrees to practice normal good
farming methods as to cultivation, harvesting, and handling
said cotton and to harvest, gin and store the cotton in a
bonded warehouse as rapidly as possible. Variety planted Coker
310 & Stoneville 213.
Cotton to be defoliated before picking, and all available
cleaning equipment at gin to be used (no bypass).
Cotton to be ginned at ____.
All samples to be delivered to V & M Cotton Company.
All Cotton harvested by hand or spindle picked  no ground
machine or stripper cotton acceptable on this contract.
Official Government class card determines class of cotton and
the Compress receiving date on receipt determines date.
V & M Cotton Co. agrees to pay the Producer and Seller prices
as listed below, net weights, FOB Compress, for all and only
cotton produced on the above mentioned farm or farms.
 30.00¢ for all cotton with micronaire 3.3-5.2
 29.00¢ for all cotton with micronaire 5.3 & up
 28.00¢ for all cotton with micronaire 3.0-3.2
 28.00¢ for all cotton 3.0 & up and reduced in grade a/c
 grass or bark
 26.00¢ for all other cotton and any cotton harvested after
 12/7/73
 20.00¢ for all Below Grades
(Note: 450 acres to be stored in Greenwood; about 2050 in
Indianola)
Seller and producer agrees to pay transportation cost of the
cotton to the compress and to pay the first's month storage and
Cotton Board Fees, and a commission of $1.25 per bale to be
deducted.
/s/ Austin Farms By Winfred E. Austin date 2/26/73 Witness ____
Producer and Seller Partner
 date Witness ____
Producer and Seller
V & M Cotton Company
By /s/ J.M. Montgomery, Jr. date 2/23/73 Witness ____
STATE OF MISSISSIPPI
COUNTY OF SUNFLOWER
Personally appeared before me, the undersigned authority,
in and for said County and State, the within named J.M.
MONTGOMERY, JR., partner of V & M Cotton Company, who
acknowledged that he signed and delivered the foregoing
instrument as his voluntary act and deed.
WITNESS my hand and official seal this the 7th day of
August, 1973.
 /s/ Patricia K. Cox 
 NOTARY PUBLIC
My Commission Expires:
May 3, 1976"

NOTES
[1] See Appendix I.
[2] Carolina Textile Company was purchasing agent for Spartan Mills.